JUDGE COPER
DELIVERED THE OPINION OF THE COURT.
Having been convicted of the crime of mule-stealing, and sentenced to confinement in the penitentiary for a period of three years, the appellant, Fee Blackburn, has appealed to this court to obtain a reversal of that judgment.
It will be necessary, in order to obtain a clear understanding of the questions to be decided, to make a somewhat extended statement of the evidence introduced on the trial.
The commonwealth introduced Robert Nevill, who proved that he was the owner of the mule alleged to have been stolen, and that he allowed his son William to ride him to church in the country on a Sunday night in August, 1874.
William swore that he rode the animal to church, and hitched it near by, and went into the house, where he remained during service, and that when he came out the mule was gone.
James Trainer swore that one Holden, John Goodson, and himself were together at his (witness’s) house on the morning of the day preceding the night on which the mule was stolen; that Lee Blackburn was also there, and he and the witness went to the house of Mike Blackburn, the father of Lee, to get him to come over; that the three (Mike and Lee Blackburn and the witness) returned together, and met Holden and Goodson at a certain mulberry tree in the field; that Holden and Goodson told Mike Blackburn that they wanted some horses; that Mike said there would be a good chance at the church that night, as horses would be there ready saddled *183 and bridled. He said that if he went to get the horses he might be suspected, as he but seldom went to church, but that Trainer could go. Witness said he could not leave home, as his wife was sick; that Mike Blackburn then said he would send Lee, and then they separated; that on the next day, in the forenoon, Lee Blackburn was at his house, and told him and his wife that he got a mule for Holden and a horse for Goodson; that Holden was such a - coward that he was afraid to get on the' mule, and that he (Blackburn) had to take the mule out for him; that Goodson had thrown a rock or something else on the top of the church, and that he then went out to them.
Trainer’s wife was also sworn, and made a similar statement as to what the appellant stated on the next morning at Trainer’s house.
John Goodson was also introduced by the commonwealth, and stated that Holden and himself had a place of concealment in a field belonging to Mike Blackburn, and that they staid at night at the house of Trainer, who fed and lodged them. He also stated that on the day before the mule was stolen, at night, Mike and Lee Blackburn came to the place where he and Holden were; that there was no agreement or arrangement with either Mike or Lee that Lee was to show them any horses that night; that he (witness) was at the church, and saw the mule in Holden’s possession, but did not see him get it; that he did not see Lee Blackburn at the church or any where else that night, and so far as he knew Blackburn had nothing to do in stealing the mule. He then, in- answer to a question propounded by the attorney for the commonwealth, stated that he might have testified before the grand jury that he and Holden were to hide out, and Lee Blackburn was to bring the stolen stock to them; and that he might have said something of the same nature to William Moseby.
*184 To this question and the answer thereto the appellant objected; but his objection was overruled, and he excepted.
■Whether this ruling was correct is the first question for decision.
The learned counsel argue that, having introduced the witness, the commonwealth indorsed him as truthful and credible, and that after he “ had given in evidence such statements as certainly acquitted the prisoner” the commonwealth should not have been permitted to discredit him by proving that he had made contradictory statements on other occasions, thereby destroying all faith in his testimony.
Prior to the adoption of the Codes of Practice a party who was surprised by the testimony of his own witness could only contradict him by proving that the facts were otherwise than as stated by him. (Champ v. Commonwealth, 2 Met. 24.)
Section 660 of the Civil Code, which, as decided by this court in the case supra, is made applicable to criminal cases, has changed the common-law rule on this subject.
By the provisions of that section “ the party producing a witness is not allowed to impeach his credit by evidence of bad character, unless it is a case in which it was indispensable that the party should produce him; but he may contradict him by other evidence, and by showing that he has made statements different from his present testimony. And in Champ’s case it was held that “ the obvious meaning of the rule is that where a witness states a fact prejudicial to the party calling him, the latter may be allowed to show that such fact does not exist, by proving that the witness had made statements to others inconsistent with his present testimony.”
Applying the doctrine there announced to the facts of this case, we incline to the opinion that the court did not err in allowing the evidence objected to to go to the jury.
The commonwealth offered evidence to prove that the prisoner was present at a conference between Holden, Goodson, *185 Mike Blackburn, and Trainer, at which it was agreed that the prisoner should go to the church, and get, or aid in getting, the stock, and that he had actually done so; and that evidence also tended to prove that Goodson knew that the prisoner was ■at the conference and also at the church.
Goodson’s testimony that no such agreement or arrangement was made, and that if the prisoner was at the church, or had any thing to do with stealing the mule, he did not know it, was prejudicial to the commonwealth, because it contradicted Trainer. If Trainer swore the truth, Goodson knew that it was understood at the conference in the field that the prisoner was to go to the church at night and show the horses. If Goodson swore the truth, Trainer certainly did not, for Trainer says Goodson was present when the conference took place and the arrangement was made.
The evidence of Trainer and Goodson showed that Goodson and Holden were both horse-thieves, and that they and Trainer and Mike Blackburn and the prisoner were all in conference on some subject during the day. Trainer tells what that conference was about and what it resulted in. Holden and Good-son being thus shown in conference with the two Blackburns and Trainer, and it being shown by Goodson that he and Holden were at the church that night and got a mule and horse, it appeared that Goodson had an opportunity to know whether the prisoner was there or not. He swore that if he was there, or had any thing to do with stealing the mule, he did not know it. Trainer and his wife both swore that the prisoner said he was there, and helped to steal the mule. The direct tendency of Goodson’s statement, therefore, was to prove that the prisoner was not at the church and did not aid in stealing the mule. This contradicted both Trainer and his wife. It tended to show that the prisoner was not there, and therefore either that he made no such statement as that testified to by Trainer and his wife, or that he made to them a false statement.
*186 It is thus shown clearly, as we think, that Goodson testified to facts prejudicial to the commonwealth, and that evidence of what he swore before the grand jury and of what he told to Moseby was admissible under the rule laid down in Champ’s case.
2. The next objection urged to the rulings of the court is that there was - error in refusing to give certain instructions asked by the counsel for the prisoner.
Several instructions were asked and refused, but only two of the number are insisted upon here. The first of these reads as follows, viz.:
“The court instructs the jury that the confession of a defendant may be proved against him, and when satisfactorily established by credible evidence is the strongest character of testimony against the party. But it is the duty of the jury to bear in mind that the evidence of the confession should bo scanned by them with great caution, and unless they are satisfied of the honesty and veracity of the witnesses by whom confessions are attempted to be proven, then such evidence is the weakest and most unsatisfactory held competent in law.”
This instruction was properly refused upon two grounds:
(1) The jury would have been told in effect, not only that evidence of confessions was weak and unsatisfactory, unless the confessions were satisfactorily established, but also, that they should be so established, by the testimony of witnesses of whose honesty and veracity they were satisfied. The jury may have believed, from the testimony of Trainer and his wife and the facts before them, that the confessions to which they testified were in fact made, and yet they may not have been satisfied of, the honesty and veracity of the witnesses. Indeed, in view of the facts, they could not have been so satisfied as to Trainer, who confessed that he was the associate and harborer of horse-thieves. To have given the instruction would have been virtually to direct a verdict of not guilty.
*187 (2) But there is a far more serious objection to the instruction. It would have been an invasion of the province of the jury. Evidence of confessions, like evidence of other facts, is to be weighed by the jury, and the court has no more right to caution them in regard to such evidence than in regard to any other species of evidence.
Counsel cite Higgs v. Wilson (3 Met. 337), Vaughn v. Hann (6 B. Mon. 342), and Snelling v. Utterbaek (1 Bibb, 611) in support of their view of the law. The last two cases were suits in equity, and the court, as triers of the facts, were analyzing the evidence, and said, in substance, that evidence of the declarations and admissions of a party is in itself the weakest and most unsatisfactory of all testimony, on account of the facility with which it may be fabricated and the impossibility of disproving it by direct negative testimony.
It is weak and unsatisfactory, because the witness may have heard only a part of what was said, or may not have correctly understood it, or may imperfectly remember. It is almost impossible to remember the exact words used by another, or to repeat them in precisely the same connection in which they were used. These and other considerations rendering such evidence unsatisfactory may well be urged by counsel upon the attention of the jury, but should not be commented on by the court. (Brady v. Commonwealth, 11 Bush, 282.)
The case of Higgs v. Wilson was an action at law. This court reversed the judgment in that case because the circuit court had, in an instruction, confounded the distinction between admissions and declarations and the evidence by which it was attempted to prove them; but we know of no case in which this court has ever reversed a judgment because the court below refused to give such an instruction as that under consideration, or in which it ever approved such an instruction when called on to pass upon it; and in the recent case of Brady v. Commonwealth we intimated, after mature consideration of *188 an instruction upon a kindred subject, that an instruction such as that now under consideration should not be given.
3. Section 239 of the Criminal Code provides that “A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.”
The only evidence before the jury tending to corroborate the testimony of Trainer was that of his wife and of Goodson. Goodson was a confessed accomplice, and, according to Mr. Greenleaf, if two or more accomplices are produced as witnesses they are not deemed to corroborate each other. (1 Greenleaf’s Evidence, section 381.)
In view of the statute and this state of the evidence, counsel for the prisoner asked the court to instruct the jury, in effect, that the testimony of the wife of Trainer was not such corroboration of his testimony as the law required.
It was held in Rex v. Neale (7 Carr, and Payne, 168) that the testimony of the wife of au accomplice could not be considered as corroborative of the testimony of her husband.
~We know of no other case in which this doctrine has been announced. The question is an open one in this state, and we are at liberty to adopt that rule which, not being opposed to such weight of authority as can be regarded as settling the question, seems to us most conformable to sound reason and legal analogy.
■ In an edition of Phillips on Evidence, published since the decision in Neale’s case, the author plainly indicates his disagreement with the doctrine of that ease.
Mr. Greenleaf notices the case in a note to section 381, but makes no comment upon it.
The case does not seem to have been considered, but, according to the report of it, was decided without argument, and *189 in court, upon a colloquy between the court and public prosecutor. “The prisoner was indicted for stealing a sheet. It appeared that the stolen sheet was found in the house of William Brain, who was admitted king’s evidence; and William Brain gave evidence to show that the prisoner stole the sheet.”
Park, J., presiding at the trial, inquired of the prosecuting attorney: “What evidence have you, Mr. Walesby, to confirm the accomplice’s statement?
“Mr. Walesby. The wife of the accomplice.
“Park, J. Have you no other confirmation?
“Walesby. No, my lord.
“Park, J. Confirmation by the wife is, in a case like this, really no confirmation at all. The wife and the accomplice must be taken as one for this purpose. The prisoner must be acquitted. Verdict, not guilty.”
This is the whole case as reported, and it may be remarked that it probably was rested on the idea already adverted to that the testimony of one accomplice will not be deemed a corroboration of the testimony of another.
The stolen sheet was found in Brain’s house. It was an article which was, from its character, much more likely to be in the actual custody of the wife than of the husband, and there was probably quite as much ground for holding the wife to be an accomplice as there was to so consider the husband. The judge said, “ Confirmation by the wife is, in a ease like this, really no confirmation at all.” He did not say generally that the evidence of the wife of an accomplice could not be received to corroborate the testimony of her husband. He confined his remark to a case like that before him, and that case was one, as already remarked, in which the wife may have herself been an accomplice.
But whatever may have been the ground upon which the case was decided, it does not commend itself to our judgment if it is to be understood as deciding that when there are no *190 grounds for suspecting the complicity of the wife she may not be received to corroborate her husband when he is shown to be an accomplice.
Until our statute was adopted the degree of credit which ought to be given to an accomplice was a matter exclusively within the province of the jury. It has been said that the jury ought not to believe an accomplice, unless his testimony was corroborated by other evidence, and, without doubt, great caution in weighing his evidence is indicated by prudence and good reason. But there was no such rule of law; it being expressly conceded that the jury might, if they pleased, act upon the evidence of the accomplice without any corroboration of his statement. (Greenleaf on Evidence, section 380, and note 1 to that section.)
The main reason which renders the testimony of an accomplice unreliable is that he is himself shown to be guilty of crime, and this circumstance ought greatly to weaken his evidence. So far as the statute is based upon this ground there can be no conceivable reason why the evidence of the wife of an accomplice may not be received to corroborate him.
Another ground for suspicion of the testimony of an accomplice is that, as he can not be compelled to testify, he expects that by voluntarily disclosing what he knows, or professes to know, he will escape prosecution and the danger of punishment; and as far as this hope may be supposed to influence his statements it may be expected that his wife will be equally affected by it. But the wife who has none of the moral taint which affects the husband, because of his participation in crime, ought not to be discredited alone on the ground that her husband is a felon. Such a rule is neither just to her nor safe for society.
It is only because of the express provision of the statute that the court has power to intervene and prevent the jury from finding even upon the unsupported testimony of the *191 accomplice; and as it does not in terms declare that corroboration by the wife shall not be sufficient, we do not feel inclined to so extend it by construction as to render her corroboration ineffectual.
The judgment is affirmed.