**Howard E. FERGUSON and Teddy Melvin, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 17, 1974.

Rehearing Denied Sept. 13, 1974.

Anthony M. Wilhoit, Public Defender, J. Vincent Aprile, II, Anna H. Isaacs, Asst. Public Defenders, Frankfort, for appellants.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Peter C. Macdonald, Asst. Attys. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

On a jury trial, Howard E. Ferguson and Teddy Melvin were found guilty of rape, armed robbery, and taking a motor vehicle without the owner's consent. Judgment in accordance with the verdict imposed the following sentences of confinement: Ten years for the rape; life for the armed robbery; and one year for the motor vehicle theft. Ferguson and Melvin have appealed from the judgment of conviction, asserting numerous grounds of error.

The prosecuting witness, a young married woman, testified that Ferguson and Melvin approached her as she was about to enter her car in a shopping-center parking lot; they forced her into her car and drove it to a motel; at gun point they robbed her of around eight dollars to pay for a room; they took her into the room, tied her to the bed, and each raped her; they then left, taking her car.

The two men testified in their own defense at the trial. They admitted having intercourse with the prosecuting witness but said it was at her invitation, and that she voluntarily gave them the money for the motel room when they told her they had no money. They admitted also that

they tied her to the bed and took her car but they said they tied her to the bed after the intercourse and then departed in her car, when she demanded $40 for her favors and threatened to call the police.

The two appellants join in three claims of error, and appellant Ferguson makes two additional claims. We shall consider first the joint claims.

At the outset of the trial the defendants moved jointly that defense counsel be allowed "to voir dire the jury as individuals and out of the hearing of the other prospective jurors." In support of the motion counsel tendered a copy of an item from the previous day's local newspaper, which stated that the trial was to commence the next day and mentioned that the defendants originally had pleaded guilty to the rape charge but had withdrawn that plea at the last minute. The trial court overruled that motion, and the appellants claim error in that ruling.

The basis for the motion for separate examination of the prospective jurors, and for the argument of error in the overruling of the motion, is Standard No. 3.4 of the American Bar Association's Standards Relating to Fair Trial and Free Press, subsection (a) of which provides:

"Whenever there is believed to be a significant possibility that individual talesmen will be ineligible to serve because of exposure to potentially prejudicial material, the examination of each juror with respect to his exposure shall take place outside the presence of other chosen and prospective jurors."

In Coppedge v. United States, 106 U.S. App.D.C. 275, 272 F.2d 504, decided in 1959 prior to the promulgation of the Standards, the District of Columbia Circuit indicated its view that separate examination of the jurors should have been conducted when possibly prejudicial newspaper articles appeared *during the course of the trial*. However, the court did not reverse on that ground specifically, and did not hold that separate examination was a matter of *due process*.

Two years later the Supreme Court of the United States, in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, mentioned in passing the likelihood that a juror will be reluctant to admit prejudice in the presence of his fellow jurors, but the court did not make any holding on the subject of separate examination.

In a 1973 decision the Third Circuit, in United States ex rel. Doggett v. Yeager, 472 F.2d 229, cited and indicated its approval of Standard No. 3.4, and reversed a conviction on the ground that *due process* had not been observed in determining whether the jurors had been prejudiced by newspaper articles published during the trial. However, in that case practically no real effort had been made by the trial court to examine into the question of prejudice, and the appellate court did not squarely hold that a failure to comply with Standard No. 3.4 would alone and of itself constitute a denial of due process.

■■■ It is our opinion that separate examination of jurors or prospective jurors in circumstances of potential prejudice is a matter of procedural policy and is not a requirement of due process. We hold that the granting or denial of the motion for separate examination in the instant case was within the discretion of the trial court, and we find no abuse of that discretion.[1]

---

1. This Court in the near future will have under consideration a comparative analysis of the American Bar Association's Standards with the Kentucky laws and rules of practice and procedure, prepared under the sponsorship of the Kentucky Judicial Conference. Considera-tion will be addressed to the question of implementation of the standards in Kentucky. Pending action in that regard we suggest to the trial courts that they give thought to the use of separate examination of jurors in appropriate circumstances.

**504**

The appellants' second joint claim of error relates to an allegedly prejudicial question asked of Ferguson by the prosecuting attorney, on cross-examination. Police witnesses had testified that several days after the alleged offenses were committed they noticed the defendants in a car parked in a hospital's parking lot and questioned them as to what they were doing there, but did not arrest them because at that time they were not identified as suspects in the offenses here involved. On cross-examination of Ferguson the prosecuting attorney asked why he and Melvin had come up to the hospital, and when Ferguson replied, "We were more or less driving around; just messing around," the prosecuting attorney asked:

"Well, why didn't you drive around? Why were you sitting up there on the parking lot at the Jennie Stuart Hospital? Don't you know that is a place where a lot of people, women, walk in and out, isn't that right? Didn't you see them?"

Defense counsel objected in the words, "We object to that, Your Honor," and the court overruled the objection. The cross-examination then proceeded to explore Ferguson's story that they were in the parking lot because of tire trouble. No further mention was made of "women."

The appellants maintain that the question above quoted constituted an insinuation that they were planning to seize another rape victim in the hospital parking lot; that this amounted to the introduction of evidence of another, unrelated crime, which is not permissible; and that the question was highly prejudicial. It would be a sufficient answer that the mere voicing of an objection to the question, without a request for a mistrial or at least for an admonition, was not sufficient to establish error. If an objection is made *after* the error complained of has occurred, it is incumbent upon the objector to ask for such *remedial* relief as he desires.

However, even if it be considered that the claimed error was properly raised, the ground would not be well taken because the question complained of did not accuse the appellants of a crime. Although we hold that no prejudicial error was committed, we express disapproval of the kind of tactic represented by the question, and condemn its use.

The appellants' third joint claim of error is addressed to the prosecuting attorney's closing argument. Complaint is made of contemptuous appellations applied to the appellants, such as "jerks," "two little scums," etc.; of a plea to find the defendants guilty in order for "a woman to be safe;" and of a reference to the appellants' being found in the hospital parking lot "where a lot of nurses and people are walking around and, particularly, women" and "these officers stopped these fellows, thank God." All of the comments complained of were addressed to the rape charge and were designed, first, to discredit the appellants' story that the intercourse was voluntary on the part of the complaining witness, and second, to encourage the jury to impose a penalty of life imprisonment without parole.

No objections were made at the trial to the closing argument. That being the case, any impropriety in the argument would not be ground for reversing the judgment unless the prejudice was so apparent and so great as to result in a manifest injustice. See Stone v. Commonwealth, Ky., 456 S.W.2d 43. We think it is significant that the jury fixed the *minimum* sentence on the rape charge, thus showing that they were not prejudicially influenced by the prosecuting attorney's efforts in regard to the rape penalty. None of the remarks complained of was related to the armed robbery charge, yet the jury fixed life imprisonment on that charge. In these circumstances we are not persuaded that the remarks were prejudicial to the extent of causing a manifest injustice.

As one of his separate grounds of error Ferguson argues that the trial court erred in not admonishing the jury that a confession by Melvin, put in evidence as part of the prosecution's case, could not be considered as evidence against Ferguson. Ferguson made no objection to the admission of the confession and did not ask for an admonition, but he maintains that the trial court on its own responsibility should have given the admonition. Ferguson admits that since Melvin took the stand in his own defense, the confession was not rendered totally inadmissible under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. However, in arguing that the confession was not admissible as evidence against *him,* he overlooks the fact that by appropriate questions on cross-examination of Melvin the prosecuting attorney laid a proper foundation in accordance with Jett v. Commonwealth, Ky., 436 S.W. 2d 788, whereby the confession became admissible as substantive evidence against Ferguson. See Lowe v. Commonwealth, Ky., 500 S.W.2d 67.

Ferguson's other separate claim of error relates to his prosecution as an adult rather than a juvenile. The crimes were committed on April 19, 1973, when Ferguson was a little more than one month under 18 years of age. Charges were not placed against Ferguson until after he became 18 on May 22. Ferguson admits that an offender may be prosecuted as an adult if he is 18 years of age when the criminal proceedings are instituted against him. See Lowry v. Commonwealth, Ky., 424 S. W.2d 841. He argues, however, that the police and the prosecuting authorities deliberately delayed the institution of proceedings against him until after he reached 18. That claim was not asserted in the trial court, which precludes its consideration here, and even if it were considered we could find no merit in it because the sequence of events as stated in Ferguson's brief shows on its face that the investigation and preparation of the case, and the institution of the prosecution, proceeded with due dispatch.

The judgment is affirmed.

All concur.