**COMMONWEALTH of Kentucky, Appellant,**

v.

**Larry BROWN, a/k/a Larry Downs, Appellee.**

Supreme Court of Kentucky.

July 7, 1981.

Rehearing Denied Sept. 1, 1981.

Steve Beshear, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellant.

Jack Farley, Public Advocate, Mark A. Posnansky, Rodney McDaniel, Asst. Public Advocate, Frankfort, for appellee.

LUKOWSKY, Justice.

This is an appeal by the Commonwealth from an order of the Fayette Circuit Court which dismissed a murder indictment against Larry Brown. The order was entered based upon the Commonwealth's representations that several pre-trial rulings of the court had the effect of preventing the Commonwealth from using all the evidence it had that was reasonably calculated to convict Brown of the offense charged. Consequently, the dismissal was properly granted if the pre-trial rulings were correct.

This case originated in Marion County where Brown, Greg Owens, Steve Edelen and Clarence Furman allegedly burglarized the home of Iva Bugg who was killed during the burglary. Owens and Edelen confessed to the burglary and inculpated Brown as Mrs. Bugg's killer. The Marion County Grand Jury indicted Brown for murder. The Commonwealth's Attorney indicated his intention of seeking the death penalty. Brown successfully sought a change of venue and the case was transferred to the Fayette Circuit Court.

The Commonwealth intended to use Owens, Edelen and Furman as witnesses against Brown. At a pre-trial hearing, Owens and Furman indicated that they would refuse to testify on the grounds of their Fifth Amendment and Ky. Const. Sec. 11 privileges against self-incrimination. Edelen indicated that he would testify "with" Brown.

The Attorney General and the Commonwealth's Attorney proposed to grant immunity from further prosecution to the witnesses who asserted the privilege against self-incrimination and thereby compel their testimony at trial. The witnesses challenged the authority of the prosecutors to grant immunity and relied on their privilege. The Commonwealth then indicated that it would call them as witnesses at trial and, if they successfully asserted their privilege, it would seek to introduce the prior confessions for impeachment and as substantive evidence.

These problems plus the applicability of former RCr 9.62 (corroboration of accomplice testimony) came to the trial court's attention at pre-trial conference. Accordingly the court issued an opinion and pre-trial order in which it ruled (A) the Commonwealth lacked authority to grant immunity from prosecution to witnesses, (B) RCr 9.62, which was in effect at the time the crime was allegedly committed, was applicable, and (C) the confessions would not be admissible under the Jett Doctrine in the event the accomplices refused to testify.

## A

■ The trial court correctly ruled that the attorneys for the Commonwealth had no authority to grant immunity from further prosecution to the witnesses who refused to testify in this case. The Kentucky and United States Constitutions contain no applicable provision and our statutes, albeit extending this authority in limited situations,[1] neither empower a prosecutor gener-

---

1. See for example KRS 119.345 (election offenses); KRS 199.430(2) (child welfare hearings); KRS 205.170(2) (public assistance hearings); KRS 242.420 (liquor law violations); KRS 276.990(11) (offenses relating to common carriers); KRS 304.2–350 (insurance); KRS

ally nor authorize him under the facts of this case to grant immunity to a witness in order to compel his testimony. The great weight of authority in this country, which we follow today, supports the principle that, absent statutory or constitutional provisions to the contrary, a prosecutor has no such inherent power. *United States v. Ford* ("Whisky Cases"), 99 U.S. 594, 25 L.Ed. 399 (1879); *State v. Roberts,* 4 Conn.Cir. 271, 230 A.2d 239 (1967); *Apodaca v. Viramontes,* 53 N.M. 514, 212 P.2d 425, 13 A.L.R.2d 1427 (1949); *Commonwealth v. Carrera,* 424 Pa. 551, 227 A.2d 627 (1967); *Temple v. Commonwealth,* 75 Va. 892 (1881); 21 Am.Jur.2d, Criminal Law, sec. 150 (1965 and Supp.1980); 81 Am.Jur.2d, Witnesses, secs. 56–57 (1976 and Supp.1980); Annot., Power of Prosecuting Attorney to Extend Immunity from Prosecution to Witness Claiming Privilege Against Self-incrimination, 13 A.L.R.2d 1349–1441; 3 Wharton's Criminal Procedure, sec. 409 (1975 and Supp.1979); 8 Wigmore, Evidence, sec. 2280b (McNaughton rev. 1961).

The Congress of the United States has seen fit to authorize federal prosecutors to grant immunity from further prosecution to witnesses who refuse to testify. 18 U.S.C. secs. 6001–6005. We believe that similar legislative action is required in our Commonwealth to give its prosecutors this authority. Justice Cardozo, while Chief Judge of the New York Court of Appeals, expressed the proposition thus:

"Whether the good to be attained by procuring the testimony of criminals is greater or less than the evil to be wrought by exempting them forever from prosecution for their crimes is a question of high policy as to which the lawmaking department of the government is entitled to be heard."

*Doyle v. Hofstader,* 257 N.Y. 244, 177 N.E. 489, 495, 87 A.L.R. 418 (1931).

We are not dissuaded from our opinion by KRS 15.020, which states in part, "The Attorney General is the chief law officer of

341.210 (unemployment compensation); KRS 372.100 (champertous contracts concerning land); KRS 432.520 (protection of prisoners);

the Commonwealth of Kentucky and . . . shall exercise all common law duties and authority pertaining to the office of the Attorney General under the common law except when modified by statutory enactment."

■ Our cases have never recognized inherent authority in prosecutors to grant immunity from prosecution to witnesses. *Workman v. Commonwealth,* Ky., 580 S.W.2d 206 (1979) and *Brock v. Sowders,* Ky., 610 S.W.2d 591 (1980) offered no solace to the Commonwealth. Their thrust is that the government as promisor will be required to perform its bargain once the promisee has relied on the promise and performed his part of the bargain. They do not confer power on the government or any representative thereof. They merely preserve the integrity of the Commonwealth.

■ This Commonwealth was created by the binary fission of Virginia. Sect. 233 of our Constitution provides:

"All laws which, on the first day of June, one thousand seven hundred and ninety-two, were in force in the State of Virginia, and which are of a general nature and not local to that State, and not repugnant to this Constitution, nor to the laws which have been enacted by the General Assembly of this Commonwealth, shall be in force within this State until they shall be altered or repealed by the General Assembly."

In *Coleman v. Reamer's Ex'r,* 237 Ky. 603, 36 S.W.2d 22, 23 (1931) we pointed out:

"By an ordinance of the Virginia Legislature passed in 1776, it is declared that the common law of England and all statutory enactments of parliament made in aid of the common law prior to the fourth year of King James 1st, and which were of a general nature and not local to that kingdom, were made a rule of decision and were in full force and effect in Virginia

KRS 436.510 (gambling offenses); KRS 437.140 (conspiracy).

until the same were altered by the Legislature." (citations omitted)

Neither the pre-1792 statutory nor decisional law of the Old Dominion countenanced the grant of immunity by prosecutors. 1789 Va. Acts Ch. 30, Sec. 8; *Commonwealth v. Dabney*, 1 Rob. 696, 40 Va. 431 (1842). A similar observation was made about the ancient law of England by the Supreme Court of Appeals of Virginia in *Dabney*, supra at 710, when it quoted the following comment of Sir Matthew Hale with approval:

" 'more mischief hath come to good men by . . . false accusation by desperate villains, than benefit to the public by discovery and convicting of real offenders.' "

There simply is no common law authority permitting prosecutors to grant immunity from prosecution to obtain testimony.

### B

■ The trial court also properly ruled that RCr 9.62, which was abolished effective Sept. 1, 1980, but was in effect at the time Brown allegedly murdered Mrs. Bugg, would apply if the Commonwealth proceeded to prosecute Brown and succeeded in introducing the testimony of his accomplices. RCr 9.62 proscribed a conviction based on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. Its abolition enables the Commonwealth to convict on less evidence than previously required.

■ Clearly, allowing the Commonwealth to proceed with this advantage would violate Sect. 19 of our Constitution and Art. 1, Sect. 10 of the Constitution of the United States, both of which forbid ex post facto laws. The Supreme Court of the United States has specifically listed as an example of these onerous laws one that "alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the of-

fender." *Calder v. Bull*, 3 Dall. 386, 390, 3 U.S. 386, 390, 1 L.Ed. 648 (1798). See *Blondell v. Commonwealth*, Ky., 556 S.W.2d 682 (1977). It matters not that the retroactive reduction in the quantum of proof results from the exercise of the judicial rulemaking power rather than from an enactment of a legislative body. See *Bouie v. City of Columbia*, 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964).

We see no reason to reinvent the wheel by writing tediously on this point. We direct the attention of those interested in a more extensive discussion of the problem to part IV of the opinion in *Bowyer v. United States*, D.C.App., 422 A.2d 973, 978 (1980).

### C

■ The trial court properly ruled that the statements of Owens and Furman would be inadmissible if they refused to testify at Brown's trial. Furthermore, the court rightly decided that the Commonwealth not be allowed to call them as witnesses because the Commonwealth was, aware that they would assert their privileges against self-incrimination. Potential prejudice and unfairness of constitutional proportions support the soundness of both rulings.

The Commonwealth asserts that, as soon as the accomplices take the stand and refuse to testify, the prosecutor may proceed to impeach their silence by introducing their confessions as prior inconsistent statements under the doctrine established in *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). The Commonwealth not only misconstrues *Jett*, but fails to grasp the rationale behind its requirements.

■ *Jett* establishes that the effect of prior inconsistent statements once admitted into evidence, is not limited to impeaching the credibility of witnesses. It allows such statements to be considered as substantive evidence when a witness is available and subject to cross-examination. *Jett*, supra at 792. If a witness remains silent he makes

no statement. Consequently, there is nothing with which the prior statement can be inconsistent. The prior statement is admissible only if it is inconsistent, the probative effect of the prior statement never ripens into an issue.

■ In *Crawley v. Commonwealth*, Ky., 568 S.W.2d 927 (1978) we held, that for the purpose of determining whether a declarant is unavailable, the definition of unavailability found in Rule 804(a) of the Federal Rules of Evidence is to be applied. That rule reads in part:

> " 'Unavailability as witness' includes situations in which the declarant—(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject of his statement. . . ."

Consequently, a person who justifiably claims a privilege against self-incrimination and thereby cannot be forced to testify is unavailable as a witness for the purpose of invoking *Jett.*

■ The basis for the requirement of availability for cross-examination is self-evident. A criminal defendant's inability to cross-examine a witness regarding extrajudicial statements denies him the right of confrontation secured by Section 11 of our Constitution and the Sixth Amendment to the federal Constitution. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Such statements are consequently inadmissible. *Owsley v. Commonwealth*, Ky., 458 S.W.2d 457 (1970).

■ To hold otherwise would be patently unfair to the defendant. The witness is effectively not there. The defendant is in an unduly disadvantageous position to counter either the making or the truth of his statements. It is reasonable to infer that the introduction of a statement could easily lead to the jury's believing that the witness made it, and his refusal to testify could result in their improperly inferring that it was true. *Douglas*, supra at 419. When, as

is conceded by the Commonwealth in this case, accomplices' confessions comprise the prosecutor's entire case, the "inferences from a witness' refusal to answer [would add] critical weight to [that] case in form not subject to cross-examination and thus [would] unfairly prejudice the defendant." *Namet v. United States*, 373 U.S. 179, 187, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278, 284 (1963), as quoted with approval in *Douglas*, supra at 420.

This potential for prejudicial error also supports the trial court's ruling that the Commonwealth be prohibited from calling Owens and Furman as witnesses in Brown's trial. A growing number of jurisdictions have found prejudice when a prosecutor calls as a witness a person who is implicated in the defendant's alleged crime for the purpose of extracting from him a claim of privilege against self-incrimination. See Annot., Prejudicial Effect of Prosecution's Calling as Witness, to Extract Claim of Self-incrimination, One Involved in Offense with which Accused is Charged, 86 A.L.R.2d 1443–1459.

In *Higgs v. Commonwealth*, Ky., 554 S.W.2d 74 (1977) we reversed the defendant's conviction of larceny because the Commonwealth called as a witness a co-indictee when aware she would invoke her Fifth Amendment privilege and asked her a question which she then declined to answer. There we reasoned:

> "With the jury's tendency to accept as true a statement unanswered by a witness who invokes the Fifth Amendment privilege, together with the defendant's inability to cross-examine the witness, defendant is unduly prejudiced . . . . And the error was compounded by the prosecutor's awareness that the [witness] would invoke the privilege."

Id. at 75.

The order of the Fayette Circuit Court is affirmed.

All concur.