Gregory Arnold MURPHY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

and

Gregory Arnold MURPHY,
Movant/Appellant,

v.

COMMONWEALTH of Kentucky,
Respondent/Appellee.

Supreme Court of Kentucky.

May 11, 1983.

Rehearing Denied July 6, 1983.

Frank W. Heft, Jr., Chief Appellate, Jefferson Dist. Public Defender, Louisville, for appellant.

Steven L. Beshear, Atty. Gen., Eileen Walsh, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Justice.

Gregory Arnold Murphy appeals as a matter of right from his conviction of murder for which he was sentenced to life imprisonment. During the pendancy of the appeal, he filed a motion for a new trial based upon the alleged discovery of new evidence. A request for a hearing upon this motion was overruled, and his appeal from that order was transferred to this court. The two appeals have been heard together, and each will be considered in this opinion.

The appellant Murphy and Norman Crittenden were indicted separately for the murder of Kim Keller who was found dead from strangulation in an alley in Louisville, Kentucky, on October 18, 1979. They were tried jointly. Murphy was convicted, and the jury was unable to agree upon a verdict as to Crittenden.

Crittenden gave a statement to the police on October 30, 1979, which was reduced to writing and signed by Crittenden in which he admitted he had seen the murder but claimed that he was a witness only, not a participant. This written statement was admitted in evidence on motion by Crittenden's counsel over objection by Murphy.

In the statement Crittenden asserted that he had been with Murphy practically the entire day on October 17, 1979, and into the morning of October 18. On the evening of October 17, Crittenden, using his automobile, drove Murphy to a number of bars, liquor stores, and night spots. At approximately 1:00 a.m., October 18, they saw the deceased at Jack's Grill, and she later joined them in the car. An argument developed between Murphy and the deceased and Crittenden, at the direction of Murphy, stopped the car, and Murphy and the deceased got out. Murphy hit the deceased in the face, and Crittenden claimed he tried to stop him but that Murphy knocked him down, and he got back in the car. Murphy then pulled something around the deceased's neck, and

after about 5 or 10 minutes Murphy got back in the car and they drove away leaving the deceased in the alley.

On September 3, 1980, Crittenden gave another statement to police officers which was tape recorded. Again he placed the responsibility for the killing on Murphy but admitted that he held the deceased's arms and legs while Murphy strangled her with a short cord. He denied that he helped pull the cord around her throat.

In the tape recording he also stated that earlier in the evening of October 17, 1979, he and Murphy had stopped to see a girl named Susan, a prostitute, and that Murphy had asked her to go with them, but she refused.

The tape recording was played before the jury over Murphy's objection.

Reinella Susan Coates testified that Murphy and Crittenden came by the hotel in which she lived and propositioned her for a date on October 17, 1979; that both were drinking heavily; that Murphy was playing with a short white cord; that they solicited her to accompany them but she refused; and that they asked her where they could find the deceased, Kim Keller. She said that less than two weeks before the 17th she had been at Murphy's house with Crittenden; that both were drinking and smoking pot; that Crittenden had said he was going to kill the deceased for ripping him off; that he was going to strangle her and beat her to death; that he asked Murphy to help him and that Murphy agreed.

■ Appellant sets forth ten allegations of error in his original appeal. He first contends that the tape recording and the signed statement of the codefendant Crittenden were improperly admitted in evidence because the tape and the statement incriminated him, and he had no opportunity to confront his accuser or to cross-examine him. He relies upon *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

It is true that the tape recording and statement were admitted during the Commonwealth's case-in-chief and before it was known whether Crittenden would testify. Thus, at the time of admission appellant had no opportunity to cross-examine his codefendant concerning the allegations that incriminated appellant.

Later in the trial, Crittenden took the stand in his own defense. His testimony at trial was a repetition of the incriminatory statements he had made against appellant in the written statement and in the tape recording. Appellant's counsel cross-examined Crittenden extensively about his incrimination of appellant.

Assuming for purposes of argument, but not deciding, that no portion of Crittenden's statement or tape recording which incriminated appellant should have been heard by the jury at the time it was heard, the fact remains that Crittenden later testified to the same matters and was cross-examined about them. It would appear that his subsequent testimony and cross-examination would render harmless any error concerning incrimination by a codefendant. See *Ferguson v. Commonwealth,* Ky., 512 S.W.2d 501 (1974).

Murphy's only real claim of prejudice is that by reason of the erroneous admission of the tape recording and the Crittenden statement, he was forced to take the stand and deny the statements of his codefendant, and thus he was required to give up his constitutional right to remain silent.

The difficulty with this position is that he made no objection of this nature to the trial court. Had he made such an objection, Crittenden could have been given the opportunity to testify first. If Crittenden had been the first of the two defendants to testify, his direct testimony would have confronted appellant with the same need to testify in his own behalf. There was no requirement that Murphy be the first of the defendants to testify and Murphy, by failing to raise this issue with the trial court, precipitated the problem of which he now complains.

Appellant next contends that the trial court erred in refusing to give his tendered accomplice instruction.

This crime was committed October 18, 1979. RCr 9.62 which required corroboration of the testimony of an accomplice was abolished October 1, 1980. This trial occurred in February, 1981. In July, 1981, *Commonwealth v. Brown,* Ky., 619 S.W.2d 699 (1981), was decided in which this court held that RCr 9.62, would be applicable to crimes committed before its abolition but tried thereafter.

Appellant did not have the benefit of *Brown* at the time of his trial, nor rely upon it, yet its holding would sustain appellant's contention that he was entitled to an accomplice instruction.

We have decided to reexamine our holding in *Commonwealth v. Brown, supra. Brown* reasoned that a conviction could be had upon less evidence after the abolition of RCr 9.62 than before, and therefore the abolition of RCr 9.62 was ex post facto when applied to crimes committed before the rule was abolished but tried after the abolition.

■ At common law a conviction could be had solely on the testimony of an accomplice without corroboration. *Blackburn v. Commonwealth,* 12 Bush 181 (1876); *Commonwealth v. Barton,* 153 Ky., 465, 156 S.W. 113 (1913); Roberson, *New Kentucky Criminal Law and Procedure,* 2nd Edition, Testimony of Accomplices, sections 1828 and 1829.

■ It was decided in the case of James Atwood and Thomas Robbins, summer assizes, at Bridgewater, County of Somerset, England (1788)[1] that the testimony of an accomplice was competent and would sustain a conviction without corroboration. It was pointed out that the problem with the testimony of an accomplice was not competency but credibility. The credibility of an accomplice is suspect because he is an admitted criminal and also because his testimony may be influenced by the hope of advantageous treatment of his case.

Kentucky followed the common law and permitted a conviction on the uncorroborated testimony of an accomplice until the adoption of section 239 of the criminal code in 1854 which prohibited a conviction solely upon uncorroborated testimony of an accomplice. This code provision was carried intact into subsequent criminal codes and into RCr 9.62.

The effect of the code provisions and RCr 9.62 was that testimony, otherwise competent, was deemed to be incredible as a matter of law unless corroborated in some degree. With the abolition of RCr 9.62 we have returned to the procedure as it existed at common law.

The change is one of procedure. It does not take less evidence to convict now than before the rule was abolished. The same facts must be established to prove murder or manslaughter now as before. The only change effected by the abolition of RCr 9.62 is that an impediment to the credibility of certain witnesses has been removed.

In *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), the Supreme Court held that a statute which removed the ineligibility of felons as witnesses was applicable in the trial of crimes committed before the passage of the statute. Thus, a conviction was upheld based upon the use of testimony which could not have been used when the crime, was committed. The court held that the statute simply enlarged the class of persons competent to testify and was procedural.

Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might in respect of that offence, be obnoxious to the constitutional inhibition upon ex post *facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but— leaving untouched the nature of the

1. Reported in 2 H. Toulmin and J. Blair, *A Review of the Criminal Law of the Common-* *wealth of Kentucky,* 403–405 (1806).

crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged. 110 U.S. at 590, 4 S.Ct. at 210.

The elements of the offense of which appellant was convicted have not been changed. It takes the same proof to establish those elements now as it did before the abolition of RCr 9.62. Those elements were established by the testimony of the accomplice. The rule change was simply a procedure change which made a certain class of witnesses competent without corroboration. *Commonwealth v. Brown, supra,* is overruled, and there was no error in the failure of the trial court to give an accomplice instruction.

█ Appellant's contention that he was entitled to a directed verdict of not guilty is without merit. The testimony of Crittenden, standing alone, is sufficient to sustain the conviction. In addition to Crittenden, there was testimony of Reinella Coates that appellant and Crittenden were looking for the deceased a few hours before the murder; that appellant was twiddling a cord which fit the description of the murder weapon; and that a few days before the deceased was actually beaten and strangled she had heard appellant agree to help Crittenden kill the deceased by beating and strangling her.

█ Appellant next complains that an Assistant Commonwealth Attorney who had handled the initial phases of this case, but was not assigned to the trial, was permitted to testify that appellant, while waiting for his attorney to appear for a pretrial conference, volunteered details of his activity the night of October 17, 1979, including the fact that he had been with Crittenden and the deceased until approximately 10:30 p.m. on that night. This was used to rebut the trial testimony of appellant that he had not seen the deceased since October 9th.

The record is not clear as to whether this testimony was heard by the jury or was put into the record as an avowal. Counsel for appellant had objected to any statement made by appellant to an Assistant Commonwealth Attorney outside the presence of his own counsel. The court held a hearing on the objection and ruled that the testimony could not be admitted. The prosecuting attorney stated the substance of the testimony the witness would give if permitted to answer. The trial judge asked the witness if he would so testify, and the witness responded affirmatively.

The prosecuting attorney then posed the question to the witness and he responded. Nothing in the record indicates that the question and the response were not a part of the hearing conducted outside the presence of the jury. It appears to be an avowal placed in the record by a question to and an answer by the witness. This conclusion is bolstered by the fact that no objection is shown to the question. The court had just ruled that the witness could not be questioned on the matter. We consider it unlikely that the defense would sit mute and allow the matter to go before the jury.

In any event, there was no error even if the testimony was heard by the jury. It was offered to contradict the appellant's testimony in chief. Statements obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are not admissible in chief for the prosecution, but they may be introduced in rebuttal to contradict the testimony offered by the defendant.

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. . . . Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing de-

vices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment....

The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.... *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

In *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), physical evidence, inadmissible in chief, was permitted to be used for impeachment purposes.

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* [232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] doctrine would be a perversion of the Fourth Amendment. [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility. 347 U.S. at 65, 74 S.Ct. at 356.

During cross-examination of appellant by counsel for the codefendant, Crittenden, appellant was asked about and admitted a prior conviction for possession of heroin. This was admitted, not for impeachment, but ostensibly to show motive in view of the testimony that appellant killed the deceased because she had withheld from appellant his share of the proceeds from the sale of narcotics.

■ The vice in permitting testimony as to prior convictions is that jurors may tend to convict because of the criminal record of the accused rather than the evidence presented as to guilt. But prior convictions are admissible to show motive, guilty knowledge and intent, and we feel that the evidence of the prior conviction was not prejudicially erroneous in view of the evidence which linked narcotics as a possible motive for the murder.

■ Appellant contends that testimony of a pathologist concerning certain hair samples taken from the victim's clothing was prejudicial and was erroneously admitted because the pathologist testified to results of laboratory tests which were performed by others not under his supervision. In the first place, appellant's counsel on cross-examination was the first to examine the pathologist about the report. In the second place the pathologist's testimony made it plain that the results of the laboratory tests, according to the report, did not in any way link appellant to the crime. We think the testimony was not erroneously admitted and was not, in fact, adverse to appellant.

■ Appellant further contends the tape recording of Crittenden's statement was not admissible because the proper foundation was not laid. Specifically, he contends that the authenticity and correctness of the recording was not established, there was no showing that alterations had not been made, and no showing of the preservation of the tape.

It is enough to point out that the officer present when the tape recording was made testified in court that he caused a transcript of the tape to be made—that he listened to the tape before it was played in court—that it had not been altered—that the language on the tape played before the jury coincided with the transcription and with his memory of what was said at the time of taking. We think this sufficient to establish the correctness and preservation of the tape, and that it had not been altered.

We find no merit worthy of discussion in appellant's contention that a juror who told the trial court he could not impose the minimum penalty allowed for this crime was improperly dismissed from the panel; that testimony of Crittenden that he took a polygraph test was improper and prejudicial

and that testimony of Reinella Coates expressed a conclusion on her part that the two defendants were, in her presence, conspiring to kill the deceased. The matter was put in proper perspective when Reinella Coates testified that appellant did not say he was going to strangle her, but she did hear appellant and Crittenden discussing the strangulation of the deceased "who is now dead from strangulation and beaten."

█ Appellant's counsel filed an unverified motion for new trial which alleged that counsel had learned that one Ralph Willock saw Kim Keller and Richard Harrison at Jack's Grill on the night of her death, that they were arguing about money owed by Keller to Harrison from a "drug deal" and that they left together. The motion was not accompanied by any affidavit of Ralph Willock; it did not establish that due diligence was used to discover the alleged new evidence before trial, and the motion did not show in any way that a new trial would result in a different verdict.

The motion did request a hearing be set at which appellant could present evidence in support of the motion for new trial. The motion to set a hearing was overruled, but nothing in the record indicates that any order has been entered disposing of the motion for new trial. The order overruling the motion to set a hearing is an interlocutory order and is not appealable.

The Judgment of the Jefferson Circuit Court in 81–SC–572–MR is affirmed. The appeal in 82–SC–285–TG is dismissed.

STEPHENS, C.J., and AKER, GANT, STEPHENSON, VANCE, and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents.

LEIBSON, Justice, dissenting.

I respectfully dissent. This case contains at least two errors so prejudicial as to warrant reversal.

First, the trial court erred in refusing to give the appellant's tendered accomplice instruction. The instruction properly characterized the codefendant, Crittenden, as an accomplice as a matter of law and set forth the mandate of former RCr 9.62 that the conviction cannot be based on the uncorroborated testimony of an accomplice. To convict the jury must believe there was additional evidence tending to connect the defendant to the crime. The majority opinion acknowledges that appellant was entitled to an instruction under *Commonwealth v. Brown,* Ky., 619 S.W.2d 699 (1981), but overrules that case. I believe that the reasoning in *Brown* is sound and disagree that it should be overruled. Further, I believe that the accomplice rule has merit. This case is a prime example of a person convicted almost entirely on the testimony of an accomplice who gave prior inconsistent statements and whose motives for testifying are highly suspect.

In *Commonwealth v. Brown, supra,* this court held that retroactive abolition of RCr 9.62 is ex post facto when applied to persons allegedly committing crimes while the accomplice rule was still in effect. The court noted that the rule's abrogation enables the Commonwealth to convict on less evidence than previously required and concluded that "allowing the Commonwealth to proceed with this advantage would violate Section 19 of our Constitution and Article 1, Section 10 of the Constitution of the United States, both of which forbid ex post facto laws." *Id.* at 703.

The holding in *Brown* is supported by a long line of cases beginning with *Calder v. Bull,* 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798). *Calder* holds at page 390:

"An ex post facto law, within the meaning of the U.S. Constitution, is one which ... alters the legal rules of evidence, and receives less, or different testimony, than the law required at the commission of the offense, in order to convict the offender."

The United States Supreme Court has long recognized that certain procedural changes can fall within the prohibition of the ex post facto clause. In *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506

(1882), the court stated at page 226, 2 S.Ct. at 450–51:

"(A)ny law passed after the commission of an offense which . . . (i)n relation to that offense, or its consequences, alters the situation of a party to his disadvantage, . . . is an ex post facto law . . . . No one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time."

The United States Supreme Court has made it clear that judicial decisions, like legislative enactments, are ex post facto if applied retroactively to change either the quantum or kind of proof necessary to show guilt. See *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

The majority opinion cites *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), in support of its conclusion that the abolition of RCr 9.62 is a procedural change which does not alter the amount of proof necessary to convict. But a close reading of *Hopt* reveals that the court distinguished between laws which merely change evidentiary rules and those which change necessary proof. The court said at page 589, 4 S.Ct. at 210:

"Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto . . . . *(T)hey do not . . . alter the degree, or lessen the amount or measure of proof* which was made necessary to conviction when the crime was committed." (emphasis added).

Thus, the court actually reaffirmed its earlier holding that procedural changes which lessen the quantity or degree of proof necessary to establish guilt are in conflict with the ex post facto clause.

Clearly, appellant's conviction in the present case is based on less evidence than was required by former RCr 9.62. A conviction based solely on the *uncorroborated testimony of an accomplice* is, by definition, a conviction based on less evidence than one

based on accomplice testimony plus corroboration. The additional evidence is the independent evidence which tends to connect the accused to the commission of the crime. Additional evidence is required to prevent one from being convicted solely on his being "fingered" by another participant, because accusations by participants against each other tend to be unreliable. *Taylor v. Commonwealth*, Ky., 461 S.W.2d 920, (1970), cert. denied, 404 U.S. 837, 92 S.Ct. 126, 30 L.Ed.2d 70 (1971).

Because I believe that the reasons for the corroboration requirement of RCr 9.62 are as valid now as they ever were, I would not hasten the rule's demise by applying its abolition retroactively. More importantly, I believe that constitutional principles require the prospective application approved in *Commonwealth v. Brown, supra.*

The second error by the trial court is its failure to strike incriminating references to the appellant in the statements of the codefendant Crittenden. These statements were improperly admitted against appellant under the United States Supreme Court decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The majority concludes that this was harmless error because Crittenden later testified consistently with his previously admitted statements. Crittenden's testimony certainly was not consistent with *both* of his prior statements because they were in part contradictory. Moreover, the effect of admitting the statements was to force appellant to testify in violation of his constitutional right to remain silent. The order of proof at trial required appellant to go forward before his codefendant Crittenden. Appellant was placed in the untenable position of having to testify in order to rebut Crittenden's statements and present a defense in his own behalf. I do not agree with the majority opinion that appellant precipitated this error by failing to demand a change in the order of proof. This position is more innovative than realistic. It is manifestly unfair to force appellant to surrender one constitutional right in order to protect another. *Simmons v. United*

*States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).