COMMONWEALTH of Kentucky,
Movant,

v.

Keith PHILLIPS, Respondent.

Keith PHILLIPS, Movant,

v.

COMMONWEALTH of Kentucky,
Respondent.

Supreme Court of Kentucky.

May 11, 1983.

Rehearing Denied in No. 82–SC–214–DG
Aug. 31, 1983.

Steven L. Beshear, Atty. Gen., Suzanne Guss, Asst. Atty. Gen., Frankfort, for the Commonwealth.

Jack E. Farley, Public Advocate, Linda K. West, Asst. Public Advocate, Frankfort, for Keith Phillips.

STEPHENSON, Justice.

Keith Phillips was convicted of criminal syndication of theft by deception, KRS 506.-120, KRS 514.040, and sentenced to fifteen years' imprisonment. The term of imprisonment was ordered to be served consecutively with the previous sentence being served by Phillips. The opinion of the Court of Appeals held that the evidence adduced at trial was sufficient to sustain a conviction for criminal syndication, but reversed the case for a new trial holding that Phillips was entitled to an accomplice instruction, RCr 9.62, and that the failure of the trial court to give this instruction constituted reversible error. Phillips moved for discretionary review asserting the evidence was insufficient to convict for the offense of criminal syndication. The Commonwealth moved for discretionary review, asserting that an accomplice instruction was not required for the reason that there was other evidence of guilt sufficient to convict without the accomplice testimony. We granted discretionary review to Phillips and to the Commonwealth. We reverse the decision of the Court of Appeals that Phillips is entitled to a new trial for failure to give the accomplice instruction. In all other respects we affirm.

Considering first the issue of the accomplice instruction, the Court of Appeals' opinion relied upon *Commonwealth v. Brown*, Ky., 619 S.W.2d 699 (1981). We have reconsidered and overruled *Brown* in *Murphy v. Commonwealth*, Ky., 652 S.W.2d 69 (1983), and thus consider it unnecessary to delve in the evidence argument put forward by the Commonwealth. We are of the opinion *Murphy* is dispositive of this issue and reverse the decision of the Court of Appeals granting a new trial.

The criminal syndication statute is being considered by us for the first time and requires a detailing of the facts surrounding this incident. The General Assembly has provided for the offense of criminal syndication in KRS 506.120, which in part states:

"(1) No person, with the purpose to establish or maintain a criminal syndicate or to facilitate any of its activities, shall do any of the following:

(a) Organize or participate in organizing a criminal syndicate or any of its activities;

(b) Provide material aid to a criminal syndicate or any of its activities, whether such aid is in the form of money or other property, or credit;

(c) Manage, supervise, or direct any of the activities of a criminal syndicate, at any level of responsibility;

(d) Knowingly furnish legal, accounting, or other managerial services to a criminal syndicate;

(e) Commit, or conspire to attempt to commit, or act as an accomplice in the commission of, any offense of a type in which a criminal syndicate engages on a continuing basis;

.    .    .    .    .

(3) As used in this section 'criminal syndicate' means five (5) or more persons collaborating to promote or engage in any of the following on a continuing basis:

.    .    .    .    .

c. Any theft offense as defined in KRS Chapter 514; . . ."

By its terms this statute is what is popularly known as an anti-racketeering statute, providing for a more severe penalty for engaging in organized crime. This criminal syndication statute is generally the same as enacted in several other states.

With the terms of the statute in mind, we turn now to the facts adduced at trial.

While an inmate at LaGrange, Phillips engaged in a scheme whereby he would on the telephone pose as the credit manager for a J.C. Penney store and call in a customer credit application to the company's regional office. The office would then give

Phillips an account number. While at La-Grange, Phillips used this scheme to procure an account number for Norris, a fellow inmate who later testified for the Commonwealth. Norris used the account number to order merchandise for himself and later to pay a debt owed to Arthur Ray Penrod. Norris in his testimony explained Phillips had told him how he learned to pose as a credit manager from a man identified only as Dave who supplied Phillips with updated information on J.C. Penney's credit system.

Later Phillips and Norris were transferred to Eddyville where the charge account scheme was resumed. At this time a Gary Mayes was included. Phillips opened an account with Penney's for a K.D. Osborne and charged merchandise which was sent to Gray Mayes.

Phillips obtained a credit card in the name of Max Rosenberg and another in the name of Whitely, which were found in the possession of Arthur Ray Penrod. Merchandise including a color television was found in Penrod's possession. A letter from Penrod to Phillips refers to the use of the Max Rosenberg and K.D. Osborne cards.

Letters from Phillips to Norris, after Phillips' arrest, discuss the case and persons Phillips fear will expose the syndicate. Norris is asked to call Myrna Shore and cautioned to silence.

Phillips, when arrested for the offenses, identified Myrna Shore (Phillips procured a fraudulent credit card for her) as one of the persons with whom he collaborated to receive merchandise purchased on the fraudulent credit card. Shore lived in California, and in California another individual named Vette was interested in setting up the scheme on a nationwide basis. Other names were mentioned as individuals approached to participate in the scheme.

Phillips made a complete confession; his confederate Norris testified for the Commonwealth; officials at the penitentiary taped numerous phone conversations from Phillips to Penney's and to Shore in California. Letters from Phillips to Norris and Norris to Phillips were intercepted and used in evidence. The evidence from the taped

telephone calls was that other individuals were solicited to use the fraudulent credit cards.

In his argument for reversal, Phillips asserts that the evidence is insufficient to convict in that the Commonwealth failed to prove that four or more individuals named in the proof collaborated with Phillips and *each other* on a continuing basis and that there is no showing that Phillips acted with "the purpose to establish a syndicate."

■ Secondly Phillips argues that all nine of the persons named in the evidence must be shown to have collaborated on a continuing basis in order to sustain the conviction.

As to the second argument, we are of the opinion the Commonwealth is required by the express terms of the statute to prove a minimum of "five persons" collaborating. The requirement of "five persons" in the definitional portion of the statute is only a minimum number to prove a violation of the statute, and the Commonwealth is at liberty to prove or attempt to prove as many "persons collaborated" as enabled to do so by available witnesses. We are of the opinion that the "five persons" required by statute is not enlarged by virtue of the Commonwealth proving more than five persons. All the jury is required to believe for conviction is that "five or more collaborated." This is not giving a jury the option of finding alternative grounds of guilt.

■ Ordinarily we would not think of an organized crime group operating within a prison. However as we survey the scenario presented here, it possesses all of the trappings of the organized crime scheme the legislature intended to cover in KRS 506.-120. With the evidence presented here, the jury was certainly entitled to find that Phillips organized this scheme with the purpose of establishing and maintaining a criminal syndicate. Phillips deliberately brought a number of persons, at least five, into active participation in the scheme. There was evidence he wished his friend, Shore, to be able to establish a similar scheme in California, and some evidence of an individual wishing

to establish a nationwide organization. Phillips' purpose is overwhelmingly demonstrated by the evidence. The evidence also demonstrated as a jury issue that at least "five persons" collaborated in promoting or engaging in the scheme to commit theft by deception. The jury was justified under the evidence presented here in finding that at least five of the persons mentioned in the evidence collaborated in the scheme. Phillips' argument that there must be shown collaboration with "each other" as well as with Phillips enlarges the plain intent of the statute. The collaboration in the statute means simply collaborating in the scheme, and it is not necessary for the Commonwealth to show that each participant collaborating in the scheme collaborated with or even was aware of the collaboration of the other participants.

■■■ We are of the further opinion that the jury was entitled to find from the evidence here that the collaboration "to promote or engage" was on a "continuing basis." The standard of proof on this element of the crime is by its very nature indefinite. The Commonwealth is not held to proving any specific number of incidents or any element of time, but must show by the proof what the jury could infer from the evidence as intent to collaborate on a continuing basis. We are of the further opinion that the evidence presented here justified the jury in rendering a verdict based on this element of the offense.

It is this sort of organized crime that the legislature intended to denounce. The circumstance that this syndicate was organized in prison further exacerbates the nature of the crime.

We observe that Phillips and his associates have not availed themselves of the rehabilitation aspects of prison life.

The decision of the Court of Appeals granting a new trial on failure to give an accomplice instruction is reversed. In all other respects the decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and AKER, GANT, STEPHENSON and WINTERSHEIMER, JJ., concur.

LEIBSON, J., concurs in result and dissents from so much of the opinion as overrules *Brown v. Commonwealth* for reasons stated in his dissent to *Murphy v. Commonwealth*.