UNITED STATES of America, Appellee,

v.

Robert George PADUANO, Appellant.

UNITED STATES of America, Appellee,

v.

Anthony FERRO, Appellant.

Nos. 75–1216, 75–1217.

United States Court of Appeals,
Ninth Circuit.

Jan. 25, 1977.

Rehearing Denied Feb. 23, 1977 in No. 75–1216.

Joe Reichmann (argued), Los Angeles, Cal., for Paduano, in 75–1216.

Robert M. Talcott (argued), Los Angeles, Cal., for Ferro in 75–1217.

Terrance Michael Brown, Dept. of Justice (argued), Washington, D.C., for United States.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and WOLLENBERG,* District Judge.

WOLLENBERG, District Judge:

Appellants Paduano and Ferro were charged in a three-count indictment with participation in a scheme to sell cocaine. Count 1 charged conspiracy to distribute cocaine, 21 U.S.C. § 846, Count 2 charged possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and Count 3 charged distribution of cocaine, 21 U.S.C. § 841(a)(1). During the trial, the District Court judge dismissed the charges against Ferro contained in Counts 2 and 3. The jury then found Paduano guilty on all three charges and Ferro guilty of the charge in Count 1. We affirm.

### Appeal of Paduano

I. Judge's note to the jury re recommendation of leniency.

█ The jury deliberated approximately two days before rendering its final verdict. At the end of the first day, a codefendant was found not guilty. At the end of the first day, the beginning of the second day, and at noon the second day, the jury asked to have the instructions on entrapment reread to them. Finally, at 3:30 p. m. on the afternoon of the second day, the jury sent out a note asking: "Can a verdict of Guilty With Leniency be given by the jury?" The trial judge's full reply was:

"The punishment provided by law for the offense charged is a matter exclusively within the province of the Court and should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused. If the jury finds from the evidence beyond a reasonable doubt that a defendant is guilty of the offense it has the duty to return a verdict of Guilty,

* Honorable Albert C. Wollenberg, United States District Judge Northern District of California, sitting by designation.

understanding that the question of punishment is within the prerogative of the Court. However, if the jury, using these instructions, reaches a verdict of Guilty, I see no harm in it recommending leniency to the Court."

The last sentence was included over the objection of appellant's trial counsel. Within a few minutes, the jury returned with verdicts of guilty on all charges. No recommendation of any kind was made. The jury was polled. On appeal, Paduano renews his claim of error, relying especially on *United States v. Davidson,* 367 F.2d 60 (6th Cir. 1966), to support his claim that the trial judge's note impermissibly prompted the jury to return the guilty verdicts.

The last sentence of the note cannot be viewed in isolation from the rest of the Court's statement. *United States v. Jackson,* 470 F.2d 684, 688 (5th Cir. 1972), *cert. denied,* 412 U.S. 951, 93 S.Ct. 3019, 37 L.Ed.2d 1004 (1973). The major portion of the note states positively that punishment is solely the judge's concern and that the jury should not consider punishment in reaching its verdict. The note clearly conveys the message that any recommendation would not be binding on the judge.

Furthermore, although the jury had deliberated two days and reached a verdict immediately after receipt of the note there is no indication that the objectionable portion of the note influenced their decision. After the juries in the cases of *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *United States v. Glick,* 463 F.2d 491 (2d Cir. 1972); and *United States v. Davidson, supra,* were told that they could recommend leniency, the juries returned guilty verdicts ·accompanied by recommendations for leniency.[1] Here, the jury did not recommend leniency when the guilty verdict was returned. When the jurors were polled individually, none gave any

indication that they were recommending leniency or that such a recommendation had been made in the jury room and not reported to the Court. Under these circumstances, there is no reversible error.

## II. Entrapment as to Counts 1 and 3.

Paduano raised an entrapment defense against all three charges. The trial judge instructed the jury that by raising the defense Paduano had admitted committing "each and every act" constituting the crimes charged in the three counts against him. In requesting entrapment instructions, however, Paduano's trial counsel asserted that his client had not admitted all the elements necessary for a conviction on Count 2. In addition to claiming that the instruction was erroneous as to Count 2, appellant claims that the instruction improperly diminished his chances of acquittal on Counts 1 and 3. His theory is that telling the jury he admitted to being guilty of possession of cocaine made it less likely, in their eyes, that he could have been the victim of government entrapment on the charges of conspiracy to distribute cocaine and the distribution of cocaine.

The government's case-in-chief contained sufficient evidence to establish appellant's guilt on Counts 1 and 3. Paduano took the stand and admitted his participation in the offenses charged under Counts 1 and 3, but claimed that he was entrapped because of the friendship between the government informer's family and his own family, the appeal to his sympathy because of the informer's allegedly poor health, and the offer of money at a time when he was in financial distress. In the circumstances of this case, admission to possession of cocaine would not have contradicted or detracted from appellant's testimony as to his lack of pre-disposition to commit the of-

**1.** In *Rogers,* the jury had asked the judge if a verdict of "Guilty as charged with extreme mercy of the Court" was acceptable. In the absence of the defendant and his counsel, the trial judge answered in the affirmative. Five minutes later, the jury returned guilty verdicts with recommendations of extreme mercy. The Court held that under the circumstances of the case there was a prejudicial violation of Federal Rule of Criminal Procedure 43's guarantee to a defendant of the right to be present at all stages of the trial. Similar circumstances were involved in *Glick.*

fenses charged under Counts 1 and 3. The testimony regarding possession of the cocaine referred to events which occurred subsequent to all the incidents which allegedly changed appellant's mind about participation in illegal enterprises. Consequently, the claimed error in the jury instructions with respect to Count 2 would not have prejudicially affected his defense to Counts 1 and 3.

◼ We must also consider the propriety of the entrapment instructions with respect to Counts 1 and 3 in light of *United States v. Demma,* 523 F.2d 981 (9th Cir. 1975), because Paduano's appeal was pending at the time *Demma* was announced. *United States v. Hart,* 546 F.2d 798 (9th Cir. 1976).

Under *Demma,* "a defendant may assert entrapment without being required to concede that he committed the crime charged or any of its elements". 523 F.2d at 982. In overturning the old *Eastman* rule [2] that compelled a defendant to admit to all the elements of the offense before an entrapment defense could be raised, *Demma* did not preclude a defendant from making such an admission. *Demma* recognizes, as a practical matter, that most entrapment defenses will continue to involve admission to the commission of the offense, but this will now be a matter of choice rather than judicial compulsion.

Paduano's entrapment defense, however, was not circumscribed by the old *Eastman* rule. His objections to the entrapment instruction with respect to Count 2 make this clear. During a conference with the trial judge, Paduano's counsel objected to the proposed entrapment instruction on the grounds that it did not accurately reflect the entrapment defense to Count 2. The instruction said that Paduano had admitted all the elements of the charge, but his attorney insisted that such an admission was not a prerequisite to raising the entrapment defense and that no such admission had been made to the charge under Count 2. No such objection was made to the instruction with respect to Counts 1 and 3.[3]

This is a clear indication that Paduano was not proceeding under any compulsion from the *Eastman* rule. Whatever the reasons for his strategy,[4] Paduano's counsel did not tailor the presentation of his case to fit the *Eastman* rule. The admissions on Counts 1 and 3 were the result of a trial strategy decision. As to those counts, the full jury instructions on entrapment were factually correct, and completely and accurately describe Paduano's actual defense to Counts 1 and 3.

This case is significantly different from *Demma* and the decisions that have reversed convictions obtained prior to the announcement of *Demma.* In *Demma,* the district court refused to give any entrapment instructions. In *Hart,* the district court did not permit the defendant Robles to raise an entrapment defense because he refused to take the stand and admit the offenses. In *United States v. Stagg,* 540 F.2d 1010 (9th Cir. 1976) the defendant was not permitted to raise an entrapment defense until "after he took the stand and admitted the conduct described by the government's witnesses." In this case, Paduano's ability to testify and present his defense to the jury in the manner he saw

---

2. *Eastman v. United States,* 212 F.2d 320 (9th Cir. 1954).

3. THE COURT: Now, I take it that the only instruction that is objected to by any of the defendants would be the instructions touching on entrapment, is that correct?

MR. REICHMANN: Well, let me make it— maybe I should restate my position.

I am objecting to instruction No. 18, in that as I've indicated to the Court before, I don't feel that there has been a complete admission to all the elements of Count II. There has been an admission to many of the elements of Count II but not all of the elements. There is no requirement that the defendants have to admit. There used to be a rule that you had to admit it or you couldn't have the instruction. But a defendant can come in and say I admit what they are saying is true, but even so I may not be guilty. I may have the advantage of both defenses of entrapment and also not guilty because all the offenses haven't been completed.

THE COURT: You mean all the elements.

MR. REICHMANN: All of the elements have not been completed. R.T. 518.

4. *Cf. People v. Perez,* 62 Cal.2d 769, 44 Cal. Rptr. 326, 401 P.2d 934 (1965).

fit on Counts 1 and 3 was not precluded or conditioned in any way by the district court. Under these circumstances, the entrapment instructions were not clearly erroneous as they pertained to Counts 1 and 3.

We reject appellant's contention that the activities of the government's agents were so outrageous that due process requires reversal even though the jury did not accept the entrapment defense. *United States v. Russell,* 411 U.S. 423, 431–432, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). *Cf. Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

III. Errors pertaining to Count 2.

■ Appellant's remaining contentions relate solely to Count 2. He claims the entrapment instruction was erroneous and that the evidence was not sufficient to sustain the conviction. Since the convictions on Counts 1 and 3 must be affirmed, and since appellant received equal concurrent sentences on all three counts, we decline to review the conviction under Count 2. *United States v. Felix,* 425 F.2d 240, 242 (9th Cir. 1970).

### Appeal of Ferro

■ Ferro contends that the evidence was insufficient to support his conviction on Count 1.[5] In evaluating such a claim, the appellate court must view the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. See,* 505 F.2d 845, 856 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

The evidence here shows that Ferro was told by a government informer of the informer's alleged interest in the narcotics business. Ferro replied that his interests were elsewhere but that his "partner" was involved with heroin and cocaine. Ferro then required the informer to supply the names of some people in New York in order to make sure that the informer was not a policeman before "we can do business with you". Ferro also stated that he expected payment for his services. Later, Ferro required the informer to supply another name, but assured him that they could do business together.

A few days after that, Ferro called the informer and arranged a meeting between the informer and Paduano. At that meeting, Paduano volunteered that he had connections in the narcotics business, mentioned that the names supplied by the informer had not checked out, and started establishing the ground rules leading to the sale of the cocaine. Ferro was not present at this meeting. The only other contact the informer had with Ferro was approximately one month later. During that last meeting, Ferro inquired about the status of the deal and the informer assured him that it was going to go through and that Ferro would be paid. Ferro replied, in effect, that he was indeed sure of payment.

This evidence was sufficient to show that Ferro set up a meeting between the informer and Paduano knowing it was for the purpose of facilitating illegal narcotics activity and expected payment for his efforts. The jury could also infer that Paduano knew of the meeting's purpose ahead of time and that Paduano and Ferro were engaged in a joint effort to sell cocaine to the informer. While both Ferro and Paduano testified about these events differently, the credibility issue was resolved against them by the jury. *Glasser v. United States, supra.* The fact that Ferro may not have known of Paduano's subsequent activities in connection with the procurement and sale of the cocaine or the identity of other members of the conspiracy is irrelevant. *United States v. Friedman,* 445 F.2d 1076, 1080 (9th Cir. 1971), *cert. denied,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971). In short, "the evidence was substantial enough for the jury to properly infer, beyond a reasonable doubt," that Ferro was

---

**5.** Ferro's claim concerning the trial judge's note to the jury about leniency is foreclosed by our discussion in part I of Paduano's appeal.

guilty. *United States v. See, supra,* 505 F.2d at 856.

▌ This conclusion is not changed by the fact that the sole evidence against Ferro was the uncorroborated testimony of a paid government informant. The witness' status was before the jury and they chose to believe him. The uncorroborated testimony of an informer is sufficient to sustain a conviction. *Profitt v. United States,* 316 F.2d 705 (9th Cir. 1963).

The testimony of the informant was not unbelievable or incredible. His testimony against Ferro was not contradicted by anyone except the defendants,[6] and it was corroborated on other points by other government witnesses. The jury was informed of the way to evaluate an informant's testimony by an appropriate cautionary instruction. Finally, there are no significant trial errors that could have helped tip the scales against Ferro. Under the circumstances of this case, there was no miscarriage of justice. *Cf. United States v. Hibler,* 463 F.2d 455 (9th Cir. 1972).

The judgment is affirmed as to each defendant.

HUFSTEDLER, Circuit Judge, concurring and dissenting:

I concur in the affirmance of Ferro's conviction. I dissent from the affirmance of Paduano's conviction because the majority opinion fails to follow *United States v. Demma* (9th Cir. *en banc* 1975) 523 F.2d 981. In *Demma,* the codefendants both took the stand and admitted that they had agreed to import heroin and to distribute it to an undercover agent. The district court,

relying on the *Eastman* line of cases, refused to instruct the jury on entrapment because the defendants denied having the intent necessary to commit the crimes with which they were charged. Demma specifically requested an entrapment instruction; Brulay did not do so. The majority in *Demma* overruled *Eastman* and its ill assorted progeny and reversed both convictions. Judge Wright, concurring with Judge Wollenberg in this case, is reiterating the views of the dissent in *Demma,* in which Judge Wright joined. The dissenters in *Demma* disagreed with the majority that reliance upon the *Eastman* line of cases was plain error and that retroactivity concepts were irrelevant.[1] The dissenters therefore concluded that Brulay's conviction should not be reversed because he had not properly preserved the entrapment issue in the district court.

The entrapment instruction in this case was clearly erroneous,[2] and reversal is required by *Demma.* The majority opinion concludes that reversal was not required because (1) Paduano's counsel did not specifically except to the instruction as it applied to Counts 1 and 3, (2) he must be deemed to have waived the error as a matter of trial strategy, and (3) the error was harmless under the concurrent sentence rule. The majority's rationale is contrary to *Demma* and is unsupported by the record.

Because we are dealing with plain error, reversal is required by *Demma* even if the record were silent about the entrapment issue. However, the record is not silent. Paduano's counsel specifically objected to

---

**6.** Ferro's witness Kuehne did not hear all of the conversations between Ferro and the informant.

**1.** In *United States v. Hart* (9th Cir. *en banc* 1976) 546 F.2d 798, we held specifically that retroactivity concepts were irrelevant and that *Demma* applied in full force to all cases pending on direct appeal when that case was decided.

**2.** Instruction number 18 was as follows:

"You are instructed that the defendant PADUANO has raised a defense of entrapment. In doing so he has admitted that he commit-

ted each and every act which constitutes the crime charged in Counts One, Two, and Three of the Indictment. Therefore, the only question before you on Counts One, Two, and Three, is whether or not he was entrapped.

"However, if you find that the defendant was not entrapped, you must find him guilty of all counts in the Indictment.

"I will now instruct you as to what entrapment is."

instruction number 18. To be sure, he was specific about the application of the instruction to Count 2, but his argument addressed the whole *Eastman* concept. Surely no more is necessary to protect the issue for appeal.

Instruction 18 was tantamount to a directed verdict of guilt on all three counts, unless the jury found that the defendant was entrapped. Moreover, the district court did not tell the jury specifically that the Government had the burden of proving nonentrapment beyond a reasonable doubt, once the entrapment issue had emerged. No conceivable trial strategy could lead counsel deliberately to waive the error in instruction 18.

The majority opinion's trial strategy discussion is explicable only if we assume that the unarticulated premise of the majority is that the vice of the *Eastman* rule is that the rule compelled the defendant to take the stand and there to admit the elements of the offense. Therefore, the majority reasons, a defendant who voluntarily takes the stand and admits some or all of the elements of the offense waives the *Eastman* error. (". . . Paduano was not proceeding under any compulsion from the *Eastman* rule. Whatever the reason for his strategy, Paduano's counsel did not tailor the presentation of his case to fit the *Eastman* rule.") The premise is based on a serious misreading of *Sorrells v. United States* (1932) 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; *Sherman v. United States* (1958) 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; *United States v. Russell* (1973) 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 and upon *Demma*, which applied all three.

The basic error in the *Eastman* line of cases was the requirement that a defendant had to admit elements of the offense before he could claim entrapment. The most egregious error in perpetuating the original *Eastman* error was in those district court cases which held that a defendant had to admit the elements of the crime from the

stand to enable him to claim entrapment.[3] That extension of *Eastman* not only violated the rule of *Sorrells, Sherman,* and *Russell,* but also impaired a defendant's constitutionally secured rights. (*See, United States v. Demma, supra,* 523 F.2d at 986.)

The *Eastman* heresy does not depend upon whether a defendant takes the stand, voluntarily or not. The *Eastman* defendants voluntarily took the stand and denied that they did the acts. The reasoning of *Eastman* was that a criminal defendant could not assert inconsistent defenses; therefore, a defendant could not deny that he committed the crime and simultaneously claim that he had been entrapped to commit the crime. As we pointed out in *Demma,* the rationale of *Eastman* was mistaken, entirely apart from *Sorrells, Sherman* and *Russell.* During *Eastman's* reign, defendants could and did concede the acts in a variety of ways such as voluntarily taking the stand and not denying the acts, conceding the acts through stipulation of counsel without taking the stand, or, like *Sorrells,* by voluntarily taking the stand, admitting the acts and asserting entrapment at the same time. Demma and Brulay both took the stand voluntarily. The error in *Demma* and the error in *Paduano* are identical, although they surfaced differently. In both, the district court, relying on the *Eastman* line of cases, required the defendant to concede the element of the crime as a condition precedent to relying on the entrapment defense. The district court in *Demma* made evident his ruling by refusing to give the entrapment instruction at all because the defendants refused to admit the crime; the district court in Paduano committed the same error by telling the jury that by raising the entrapment defense, Paduano admitted the crime and the jury must find him guilty, unless it found him entrapped.

*Demma* cannot be escaped by reference to the concurrent sentence doctrine. The same error was made as to all three counts. The error cannot be deemed harmless.

---

3. *United States v. Hart, supra,* and *United States v. Stagg* (9th Cir. 1976) 540 F.2d 1010, cited by the majority, are illustrations of this manifest error. Our court never adopted this extension of *Eastman.*

What mistake could be more devastating to a defendant than erroneously directing a verdict of guilt, even if the direction is partially conditional?

I would reverse Paduano's conviction and remand for a new trial.