**Gregory Arnold MURPHY,
Petitioner-Appellee,
Cross-Appellant,**

v.

**Dewey SOWDERS, Superintendent,
Respondent-Appellant,
Cross-Appellee.**

Nos. 85–5337, 85–5338.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1985.

Decided Sept. 12, 1986.

Rehearing and Rehearing En Banc
Denied Nov. 3, 1986.

when questioned about the incident would have

disavowed any knowledge of it.

David L. Armstrong, Atty. Gen. of Ky., Frankfort, Ky., Joseph R. Johnson argued, for respondent-appellant cross-appellee.

Frank W. Heft, Jr. argued, Jefferson Dist. Public Defender, Louisville, Ky., for petitioner-appellee cross-appellant.

Before KRUPANSKY and MILBURN, Circuit Judges; and BROWN, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

The Commonwealth of Kentucky has appealed the order of the United States District Court for the Western District of Kentucky, 607 F.Supp. 385 (1985), granting a writ of habeas corpus to the petitioner-appellee Gregory Arnold Murphy (Murphy), who had been tried and convicted in a Kentucky state court for the murder of a woman in October of 1979. In granting the writ, the district court concluded that Murphy's constitutional right to be free from *ex post facto* legislative enactments had been infringed by the Commonwealth.

A primary issue of consequence confronting this court on appeal concerns the scope of the *ex post facto* prohibition in Article I of the Constitution since the Commonwealth had conceded that the repeal of Kentucky Rule of Criminal Procedure 9.62 (RCr 9.62) was a legislative act that was retroactively effective at the time of Murphy's trial.

A review of existing legal precedent has disclosed that the Supreme Court addressed the issue here presented in its factually indistinguishable seminal decision of *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884).

At the time that the homicide was committed and the indictment was returned in *Hopt*, the 1878 Criminal Procedure Act of Utah provided that convicted felons, unless pardoned by the governor, were foreclosed

from testifying in any judicial action or proceeding because, as a matter of law, they lacked credibility. After the date of the alleged homicide but prior to the trial of the case, the state legislature promulgated an act which repealed the section of the Utah law that imposed the absolute bar against felons to give testimony in judicial proceedings.

At Hopt's trial, the trial court permitted a felon named Emerson who was confined in the penitentiary as a result of a murder conviction to appear as a prosecution witness and, over the objection of the defendant, admitted Emerson's testimony which implicated the defendant Hopt in the crime of homicide charged against him. The retroactive application of the controversial legislative act in issue was not contested by the state upon appeal.

In clear and concise language which has successfully withstood both the scrutiny and erosion of time, the Supreme Court stated:

> Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done, nor aggravate any crime theretofore committed, nor provide a greater punishment therefor than was prescribed at the time of its commission, nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.

*Id.* at 589, 4 S.Ct. at 210.

In concluding its opinion, the Court emphasized its enunciated rule of law with the following reasoning:

> [A]lterations which do not increase the punishment, nor change the ingredients of the offense or the ultimate procedural facts necessary to establish guilt, but— leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only removes ex-

isting restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, ... which the state, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offense charged.

*Id.* at 590, 4 S.Ct. at 210.

The operative procedural facts of the case at bar track the facts of *Hopt* with precision. The record disclosed that Murphy was indicted in a Kentucky state court on November 26, 1979 for the crime of homicide allegedly committed on October 18, 1979. At the time that the homicide was committed and at the time that the indictment was returned, RCr 9.62 was the prevailing law of that state. It provided:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. In the absence of corroboration as required by law, the court shall instruct the jury to render a verdict of acquittal.

As in *Hopt,* subsequent to the date of the alleged homicide and indictment but prior to the trial of Murphy's case, the Kentucky legislature promulgated an act which repealed RCr 9.62. At Murphy's trial, his co-defendant Norman Crittenden (Crittenden), whom the defense characterized as an accomplice, testified that petitioner alone committed the murder and that, he, Crittenden, was merely an observer. Although Crittenden's testimony afforded the only direct evidence that Murphy committed the homicide in issue, the record reflected substantial circumstantial evidence, albeit conflicting, that corroborated Crittenden's testimony which implicated Murphy if credited

by the jury.[1] At the conclusion of the trial, Murphy requested the trial court to instruct the jury that he could not be convicted of the offense charged solely upon the uncorroborated testimony of Crittenden. The trial court denied the requested charge and the petitioner was convicted.

■ Historically, Kentucky followed the common law and permitted accomplice testimony without corroboration to support a conviction until the evolution and final enactment of RCr 9.62, at which time that enactment deemed otherwise competent testimony of an accomplice to be incredible as a matter of law unless corroborated in some degree. As in *Hopt*, the only change effected by the repeal of RCr 9.62 was that the credibility impediment which was legislatively imposed upon the testimony of a certain class of witnesses had been removed. As in *Hopt*, the impediment against the testimony of a felon and/or an uncorroborated accomplice was not the competency of such individual to testify, but rather the credibility to be assigned his testimony as a condition of his competency. In both instances, the repealed statute decreed the testimony of a felon and/or uncorroborated accomplice incredible as a matter of law. Thus, a legislative enactment which repealed a statutorily imposed impediment, which declared the testimony of felons or uncorroborated accomplices to be inadmissible in judicial proceedings because such testimony was, as a matter of law, incredible, simply enlarged the class of persons to be considered competent to testify and was procedural in effect.[2]

1. The presence of incriminating testimonial and other evidence corroborating Crittenden's testimony developed during trial was implicitly conceded by Murphy's legal counsel as demonstrated by his request for the following jury instruction in lieu of seeking an instruction for a verdict of acquittal as directed by RCr 9.62:

ACCOMPLICE TESTIMONY

An accomplice is one of two or more persons participating in the commission of a crime, either as a principal actor in its commission or one who is present and is assisting or is encouraging or holding himself in readiness to assist in its commission. If you believe from the evidence that the witness, Norman Crittenden, was an accomplice in the murder mentioned in the indictment, then you cannot convict the defendant, Gregory A. Murphy, on the basis of testimony of the said Norman Crittenden unless it is supported by other substantial evidence tending to connect the defendant, Gregory A. Murphy, with the commission of the offense in question, and any other evidence is not sufficient for that purpose if it merely shows that such offense was committed by someone and the circumstances under which it was committed. The court instructs you as a matter of law that Norman Crittenden is an accomplice in the offense charged by virtue of his testimony.

The last sentence of Kentucky RCr 9.62 explicitly provided:

In the absence of corroboration as required by law, the court shall instruct the jury to render a verdict of acquittal.

2. The United States Supreme Court has recognized on numerous occasions that the *ex post facto* clause does not apply to laws effecting changes in procedure which do not affect substantial rights *even though* they in some way operate to an individual's disadvantage. *See Weaver v. Graham*, 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17 (1981); *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Beazell v. Ohio*, 269 U.S. 167, 170–71, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925); *Mallett v. North Carolina*, 181 U.S. 589, 593–97, 21 S.Ct. 730, 732–33, 45 L.Ed. 1015 (1901); *Thompson v. Utah*, 170 U.S. 343, 351–52, 18 S.Ct. 620, 623, 42 L.Ed. 1061 (1898); *Gibson v. Mississippi*, 162 U.S. 565, 590–91, 16 S.Ct. 904, 910, 40 L.Ed. 1075 (1896); *Duncan v. Missouri*, 152 U.S. 377, 382–83, 14 S.Ct. 570, 572, 38 L.Ed. 485 (1894); *Hopt v. Utah*, 110 U.S. 574, 588–90, 4 S.Ct. 202, 209–10, 28 L.Ed. 262 (1884). *See generally* L. Tribe, American Constitutional Law § 10–3 (1978); Annot., 53 L.Ed.2d 1146 (1978 & Supp.1985).

Analysis of Kentucky's repeal of its accomplice corroboration provision necessarily involves an examination of the effect of that action on petitioner in light of the purposes of the constitutional protection embodied in the *ex post facto* clause. The Supreme Court has described the individualized nature of the inquiry to determine the character and degree of alterations of procedure necessary to infringe the constitutional prohibition against *ex post facto* legislative enactments in its decision in *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925):

Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation ... and not to limit the legislative control of remedies

Applying the teachings of the Supreme Court in *Hopt*, it would appear that the repeal of RCr 9.62 did not (1) attach criminality to any act previously committed; (2) aggravate any crime theretofore committed; (3) provide greater punishment than was prescribed at the time of the commission of the crime; or (4) alter the degree or lessen the amount or measure of the proof necessary to sustain a conviction when the crime was committed. Stated differently, the crime for which Murphy was indicted, the punishment prescribed therefor, and the quantity or degree of proof necessary to establish guilt all remained unaffected by the repeal of RCr 9.62. A corroboration requirement clearly did not occupy the status of an element of the crime nor did its elimination alter the reasonable doubt standard which traditionally protected criminal defendants. The same essential facts were required to be established by the evidence at Murphy's trial as were required to be proven prior to the repeal of RCr 9.62 to convict him of the crime of murder. Accordingly, the dictates of the Supreme Court in *Hopt* suggest a conclusion that the legislative enactment that repealed RCr 9.62 did not constitute an *ex post facto* act as applied to Murphy.

Murphy has urged this court to distinguish the Supreme Court's decision in *Hopt* from this case by asserting that the pronouncements of *Hopt* vindicate his conclusion that the retrospective application of repealed Kentucky statute RCr 9.62 substantially disadvantaged his position in violation of his constitutional right to be free from *ex post facto* applications of law. The thrust of this argument is plumbed in the following passage from *Hopt:*

> Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offense was committed, might, in respect of that offense, be obnoxious to the constitutional inhibition upon *ex post facto* laws.

and modes of procedure which do not affect matters of substance....

110 U.S. at 590, 4 S.Ct. at 210. Murphy has reasoned that repealed RCr 9.62 permitted an accomplice to testify without corroborating evidence, ergo, a lesser "amount" or "degree" of proof was essential to support his conviction.

At first blush, the language in *Hopt* on its face and Murphy's reasoning appear compelling. Upon a further reading of the Court's opinion in *Hopt*, however, Murphy's reliance on the above-quoted statement is misplaced. The Court, immediately after the sentence Murphy so heavily relies upon, juxtaposed that, "But alterations which do not increase the punishment, nor change the ingredients of the offense or ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime and the *amount or degree of proof* essential to conviction—only removes existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only...." *Hopt*, 110 U.S. at 590, 4 S.Ct. at 210 (emphasis supplied). Reading these two sentences together, it is apparent that Justice Harlan was contrasting those laws which retroactively change the elements of a crime or the burden of proving those elements with laws which merely alter the procedure of a trial. Read in context, Justice Harlan's reference to the degree or amount of "proof" in the initial sentence obviously referred to the burden of proof by which the government must prove its case, not proof of evidentiary facts which could have been placed before a jury. This interpretation is further supported by the third sentence in this series: "[Procedural] regulations of the mode in which the *facts* constituting guilt may be placed before the jury can be made applicable ... without reference to the date of the commission of the offense charged." *Id.* (emphasis supplied). Considering all three sentences together, Justice Harlan was drawing a sharp distinction between the burden of proof by which the prosecution was required to prove its case and the manner in

269 U.S. at 171, 46 S.Ct. at 69 (citations omitted).

which a state by evidentiary rules might permit a prosecutor to do so. Thus, a state could regulate, without *ex post facto* implications, the facts which "may be placed before the jury." Such a construction of *Hopt* is mandated by the facts of that case; Utah by permitting convicted felons to testify was enlarging the facts which a jury could consider in making its determination of guilt, but this enlargement of evidence in no way affected the burden of proof placed upon the prosecutor, inasmuch as all the essential elements of the crime still were required to be established beyond a reasonable doubt. Thus, this court refuses to equate Justice Harlan's reference to "proof" as synonymous with "evidence" and, accordingly, rejects Murphy's argument.[3]

This court's interpretation of *Hopt* is also consistent with the time-honored precedent which instructs the trier of fact that the test to be applied in determining the guilt of an accused in a criminal action is not which side produces the greater number of witnesses or presents the greater quantity of evidence; but rather which witness, and which evidence, in the mind of the factfinder, is the most accurate, trustworthy, and generally most credible. Accordingly, the testimony of a single witness which is assigned a likelihood of truth is sufficient to support a finding of guilt, and would justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary if, after consideration of all of the evidence in the case, the factfinder assigns greater belief to the accuracy and reliability of the one witness. *See Brown v. Davis*, 752 F.2d 1142, 1144–45 (6th Cir.1985); *United States v. Arrington,* 719 F.2d 701, 705 (4th Cir.1983), *cert. denied,* 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984); *United States v. King,* 703 F.2d 119, 125 (5th Cir.), *cert. denied,* 464 U.S. 837, 104 S.Ct. 127, 78 L.Ed.2d 123; 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138; 464 U.S. 857, 104

S.Ct. 179, 78 L.Ed.2d 160 (1983); *United States v. Larios,* 640 F.2d 938, 940 (9th Cir.1981); *United States v. Butler,* 636 F.2d 727, 729 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3010, 69 L.Ed.2d 392 (1981); *United States v. Hoskins,* 628 F.2d 295, 296 (5th Cir.), *cert. denied,* 449 U.S. 987, 101 S.Ct. 406, 66 L.Ed.2d 249 (1980); *United States v. Danzey,* 594 F.2d 905, 916 (2d Cir.), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); *United States v. Smith,* 563 F.2d 1361, 1363 (9th Cir.1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978); *United States v. Paduano,* 549 F.2d 145, 150 (9th Cir.), *cert. denied,* 434 U.S. 838, 98 S.Ct. 129, 54 L.Ed.2d 100 (1977); *United States v. Dodge,* 538 F.2d 770, 783 (8th Cir.1976); *United States v. Jones,* 486 F.2d 476, 479 (8th Cir.1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974); *United States v. Levi,* 405 F.2d 380, 383 (4th Cir.1968); 7 Wigmore on Evidence § 2034 (3d Ed.1940).

It would appear from existing precedent that the phrase "the amount ... of the proof" necessary to support a verdict of guilt within the context of *Hopt,* to be uniformly applicable in all criminal actions, assumes greater coherence when interpreted to mean the degree of proof that is required in each criminal action to convince the factfinder of the guilt of the accused beyond a reasonable doubt, always mindful of the admonition that the test for arriving at the verdict is not to be measured by the standard of which side produces the greater number of witnesses or presents the greater quantity of evidence; but which witness, and which evidence, in the mind of the finder of fact is assigned the greater degree of accuracy, reliability, trustworthiness, and credibility. Moreover, the standard to be applied for determining the degree, amount, or measure of proof necessary to convict an accused in a criminal action has been interpreted by the Supreme

---

**3.** Although this court finds the Third Circuit's decision in *Government of Virgin Islands v. Civil,* 591 F.2d 255 (3d Cir.1979), to be distinguishable from the case at bar, *see infra* note 6, it is apparent that the *Civil* court, like Murphy before this court, erroneously interpreted Judge Harlan's reference to "proof" as meaning "evidence." *Id.* at 259.

Court in constitutional terms in the following language:

> The constitutional standard recognized in the *Winship* case was expressly phrased as one that protects an accused against a conviction except on *"proof beyond a reasonable doubt...."* In subsequent cases discussing the reasonable-doubt standard, we have never departed from this definition of the rule or from the *Winship* understanding of the central purposes it serves. [citations omitted] In short, ... no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

*Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); *see In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A contrary interpretation of Justice Harlan's language in *Hopt* would offend logic and reason.

Accordingly, this court concludes that the abrogation of RCr 9.62 did not disadvantage Murphy by depriving him of any substantial right. As in *Hopt,* the amount of proof necessary to convict him was not reduced by the repeal of the above section because both before and after the appeal, a factfinder could have convicted him if it believed beyond a reasonable doubt any sufficiently incriminating evidence presented to it. The repeal of RCr 9.62 simply enlarged the class of persons who were decreed to be competent to testify in criminal cases and was not *ex post facto* in its application to prosecutions for crimes committed prior to its rescission.[4]

Apart from the conclusions hereinbefore expressed, two alternative reasons support this court's result. As previously noted, Murphy's Article I *ex post facto* infringement claim was placed in issue in this habeas corpus proceeding by his charge that the trial court refused to instruct the jury that he could not be convicted of the offense charged solely upon the uncorroborated testimony of his alleged accomplice Crittenden. The trial court denied the requested charge and the petitioner was convicted.[5]

---

4. Petitioner's attempt to distinguish *Hopt* from the case at bar is not persuasive since *Hopt* is not inconsistent with more recent Supreme Court decisions on the subject of the *ex post facto* prohibition. The procedural exception to the applicability of the *ex post facto* clause has certainly been carried through modern Supreme Court case law, *see, e.g., Weaver v. Graham,* 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17 (1981); *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). Indeed, as the Supreme Court in *Dobbert* noted, the Latin phrase *ex post facto* has been given substance not by any precise delimitation, but instead by an accretion of case law. *Dobbert,* 432 U.S. at 292, 97 S.Ct. at 2298. While focus on whether a "vested right" of a defendant is implicated by an otherwise procedural change in law may be inappropriate for *ex post facto* purposes as applied to a criminal defendant, *see Weaver,* 450 U.S. at 29 n. 13, 101 S.Ct. at 964–65 n. 13, the proper test nevertheless seeks to determine if a "substantial right" has been affected by the procedural change, *see Weaver,* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12; *Dobbert,* 432 U.S. at 293–94, 97 S.Ct. at 2298–99; *Thompson v. Utah,* 170 U.S. 343, 352–53, 18 S.Ct. 620, 623, 42 L.Ed. 1061 (1898); *Kring v. Missouri,* 107 U.S. (17 Otto) 221, 231–32, 2 S.Ct. 443, 452–53, 27 L.Ed. 506 (1883). In this regard, therefore, it is noteworthy that the Supreme Court in *Hopt* specifically distinguished its decision in *Kring.* In *Kring,* the Court found violative of the *ex post facto* clause a repeal of a provision by which a conviction on a lesser included offense of second degree murder, although vacated, operated as an acquittal of the greater crime of first degree murder. In *Hopt,* decided a year later, the Court explained that it was not presented with a similar deprivation of a "substantial right" as had been at issue in *Kring. Hopt,* 110 U.S. at 588–89, 4 S.Ct. at 209–10. In sum, the *Hopt* Court's rationale and disposition are not at odds with later pronouncements.

5. Although the Commonwealth has not directly addressed the circumstances immediately impacting upon the trial court's reason for refusing the requested jury instruction, it appears from the record that the subject was a matter of considerable discussion between counsel for the parties and the court. Defense counsel initially questioned the existence of such a relationship and advised the court " ... that there [was] an issue raised in this case as to whether or not there is not a principal and an accessory and who is the principal and who is the accessory." Tr. 637. Moreover, it would appear that the trial judge reflected upon the existence of such a relationship over the evening recess as is demonstrated by his remarks to counsel when the

It is apparent from the colloquy between counsel and the trial judge that the reason for his refusal to give the requested jury instruction was his disposition that no accomplice relationship existed between Murphy and Crittenden. Thus, in light of the court's ruling, the requested jury instruction would not have been given even if RCr 9.62 had not been repealed. Consequently, no Article I *ex post facto* implications could have attached to the court's refusal to give the requested instruction even presuming resolution of the accomplice relationship was ultimately determined to be error.

Second, a reading of the jury instructions in their entirety disclosed that the instructions incorporated no direct or indirect language which could be construed to convey an impression that the sole testimony of an accomplice satisfied the reasonable doubt standard necessary to convict Murphy.[6] The petitioner has not suggested nor has he argued that the court so instructed the jury. Although the trial court refused the requested accomplice instruction, it advised the jury, throughout its general charge, to consider all of the evidence developed during "the whole case" in arriving at its verdict.

This court is, therefore, presented with a classical federal habeas corpus appellate review of a state court conviction, wherein the petitioner has charged the state court with erroneously refusing a jury instruction assertedly mandated by state law. It is well-established that a jury instruction which violated only state law cannot provide a basis for federal habeas corpus relief unless the erroneous instruction rises to the level of a constitutional violation. *See Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257–58, 92 L.Ed. 1683 (1948); *Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir.1986); *Watters v. Hubbard*, 725 F.2d

381, 383 (6th Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984); *Combs v. Tennessee*, 530 F.2d 695 (6th Cir.), *cert. denied*, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). In evaluating the state trial court's instructions to the jury in their entirety and mindful of the absence of any language therein that would directly or indirectly infer to the jury that the testimony of an accomplice standing alone satisfied the reasonable doubt standard, this court must determine if the failure of the state trial court to give the instruction requested by Murphy "infected the accused's [Murphy's] trial to such a degree as to constitute a clear violation of due process." To prevail, "The petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned." *Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir.1986). *See Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); *Brofford v. Marshall*, 751 F.2d 845, 856–57 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 194, 88 L.Ed.2d 163 (1985); *Whiteside v. Parke*, 705 F.2d 869, 872 (6th Cir.), *cert. denied*, 464 U.S. 843, 104 S.Ct. 141, 78 L.Ed.2d 133 (1983); *Thomas v. Arn*, 704 F.2d 865, 868–69 (6th Cir.1983). Murphy has not satisfied that burden.

■ The state court instructed the jury that in arriving at its verdict, it was to consider the totality of the evidence before it, including the direct testimony of Crittenden as well as additional circumstantial testimonial and other evidence which was developed during the trial. It must be presumed that the jury followed the court's instructions in arriving at its verdict of guilty beyond a reasonable doubt. What is equally important to remember is that it is not the function or prerogative of this

---

6. This omission distinguishes the case at bar from *Government of Virgin Islands v. Civil*, 591 F.2d 255 (3d Cir.1979). In *Civil*, the jury was explicitly charged that the testimony of an accomplice by itself was sufficient to convict. *Id.* at 257.

trial resumed. In addressing his disposition, the court stated, "The Court has given that considerable thought over the evening and even off the record did discuss it with Counsel, Mr. Curtis [defendant's legal counsel], and it's simply a matter that the Court is of the belief that the evidence which has been submitted to the Jury is evidence sufficient to take the matter out of an accomplice situation." Tr. 637–38.

court or any court to speculate as to the evidence which was accepted or rejected by the jury or the weight and/or credibility it assigned to the evidence during its deliberations. Suffice to say, the totality of the developed evidence both direct and circumstantial including the direct incriminating testimony of Crittenden as corroborated by additional incriminating circumstantial testimonial and other evidence was sufficient to support the guilty verdict rendered by the jury. This court concludes that the refusal of the state trial court to give the instruction requested by Murphy did not render his trial fundamentally unfair or infect his trial to a degree as to constitute a clear violation of due process.

Upon examining the petitioner's remaining assignments of error joined on cross-appeal, this court is of the opinion that they are without merit for the reasons articulated by the district court.

Accordingly, the decision of the district court is hereby REVERSED and the petition is REMANDED to the district court with instructions to DENY Murphy's petition for habeas corpus relief.

BAILEY BROWN, Senior Circuit Judge, dissenting. I believe that the majority opinion is in conflict with well-established constitutional doctrine and therefore I respectfully dissent.

The appellee, Murphy, was convicted of murder in a Kentucky state court. At the time the victim was killed, the Kentucky law was that a defendant could not be convicted by the uncorroborated testimony of an accomplice. Kentucky Rules of Criminal Procedure 9.62 (RCr 9.62).[1] However, prior to Murphy's trial, this statutory rule was repealed, and the state trial court, giving retroactive application to the repeal, refused to give to the jury Murphy's tendered instruction to the effect that he could not be convicted on the uncorroborated testimony of an accomplice. Murphy contends that his conviction was in violation of the

ex post facto provision in the federal Constitution. Article I, § 10. The majority, basing its opinion on a tendentious reading of *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), concludes that such retroactive application of the repeal of RCr 9.62 did not violate the *ex post facto* prohibition. It is my view that, on the contrary, *Hopt* clearly commands the very opposite result and that, in failing to give Murphy the benefit of the accomplice rule that was in effect at the time of the murder for which he was convicted, his conviction was in violation of the *ex post facto* provision.

As alternative reasons for reaching its result, the majority relies on propositions that were not relied upon in the prior resolutions of this case and not relied upon by the Commonwealth of Kentucky in this court. I will address these alternative propositions after dealing with the main proposition upon which the majority relies.

Before moving into a substantive discussion of the *ex post facto* issue, I believe it would be well to outline the interesting procedural history of this case because this alone will throw doubt on the validity of the majority opinion.

Murphy asserted this *ex post facto* contention in the Kentucky Supreme Court. That court, relying on *Hopt* and in ruling against Murphy, *Murphy v. Commonwealth*, 652 S.W.2d 69 (Ky.1983) (one justice dissenting) overruled its own recent decision to the contrary. *Commonwealth v. Brown*, 619 S.W.2d 699 (Ky.1981). In the latter case, the Kentucky Supreme Court had unanimously held that giving retroactive effect to the repeal of RCr 9.62 did indeed violate the *ex post facto* prohibition in the Constitution.

While the Supreme Court denied Murphy's application for *certiorari*, 465 U.S. 1072, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984), three justices dissented. In his opinion dissenting from the denial of the writ, in which Justices Brennan and Powell con-

---

1. This had been the statutory rule in Kentucky since 1854. *Murphy v. Commonwealth*, 652 S.W.2d 69, 72 (Ky.1983).

curred, Justice White pointed out that while the Kentucky court had found *Hopt* dispositive of Murphy's claim, other courts, including the Third Circuit in *Government of the Virgin Islands v. Civil*, 591 F.2d 255 (3d Cir.1979), had concluded that *Hopt* required the opposite result.

In the district court for the Western District of Kentucky, then chief judge, now senior judge, Charles M. Allen granted habeas relief to Murphy, concluding that the *ex post facto* provision was violated by giving retroactive effect in Murphy's case to the repeal of RCr 9.62. *Murphy v. Sowders*, 607 F.Supp. 385, 387 (W.D.Ky. 1985). Judge Allen, reading *Hopt* as I do, also pointed out that the Third Circuit in *Civil* had reached the same conclusion.

At the time of the murder for which Murphy was convicted, RCr 9.62 provided:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. In the absence of corroboration as required by law, the court shall instruct the jury to render a verdict of acquittal.

Murphy does not contend that he was entitled to a directed verdict on the ground that there was no corroboration of the accomplice testimony. He does contend, however, that he was entitled to a charge, consistent with the statutory provision, in substance that he could not be convicted by the uncorroborated testimony of an accomplice; that is to say, Murphy contends that there was a jury issue as to whether Crittenden, who admittedly was at the scene of the murder, was an accomplice and whether his testimony was corroborated. The Commonwealth does not contend (as it could not) that, even if RCr 9.62 were applicable to his trial, Murphy would not have

been entitled to such a charge;[2] it simply contends that it was not a violation of the *ex post facto* clause to apply retroactively the repeal of this provision as the trial court did and thereby to deny to Murphy the benefit of the provision.

The issue in *Hopt*, as the majority opinion states, was whether it was a violation of the *ex post facto* provision to give retroactive effect to a statute allowing convicted felons to testify. At the time of the murder with which Hopt was charged, convicted felons were disqualified as witnesses, but after the murder and prior to Hopt's trial, the Utah territorial statute had been repealed, allowing convicted felons to testify. The Utah courts had allowed a convicted felon to testify against Hopt. All that the Supreme Court had to say on this issue was:

Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.

The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute. Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offense was committed, might, in respect of that offense, be ob-

---

**2.** While the majority opinion states at 207 that the "defense characterized [Crittenden] as an accomplice," it was in fact the prosecution that so characterized Crittenden. It is true that Crittenden was indicted separately, but he was charged with the same murder and tried with Murphy. The jury was unable to agree as to the guilt of Crittenden. The majority opinion agrees that the testimony corroborating Crittenden was "conflicting." Maj. op. *supra* at 207.

noxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt, but, leaving untouched the nature of the crime and the amount or degree of proof essential to conviction, only removes existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offense charged. 110 U.S. at 589–90, 4 S.Ct. at 210.

It appears to me that the repeal of the Kentucky corroboration rule that was in effect at the time of the murder in this case did "alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed." *Id.* at 589, 4 S.Ct. at 210. Moreover, "the quantity or the degree of proof to establish his guilt" was affected by the change in the law. *Id.* The repeal of RCr 9.62 did "authorize conviction upon less proof, in amount or degree, than was required when the offense was committed." *Id.* at 590, 4 S.Ct. at 210. The repeal did not leave "untouched ... the amount or degree of proof essential to conviction." *Id.*

Instead of giving *Hopt* a straightforward reading, the majority opinion seeks to avoid the plain meaning of *Hopt* by making an inaccurate comparison between the issue involved there and the issue involved here. The majority opinion states that the statute which had disqualified felons from testifying and the rule embodied in RCr 9.62 which required corroboration of accomplice testimony for a conviction accomplished essentially the same result in that the one deemed a felon's testimony incredible as a matter of law and the other deemed the

testimony of an uncorroborated accomplice incredible as a matter of law. Thus, the majority opinion's argument goes, the repeal of the disqualification of the felon and the repeal of the rule requiring corroboration of an accomplice effected the same result, i.e., "the credibility impediment which was legislatively imposed upon a certain class of witnesses had been removed." Maj. op. *supra* at 208.

Even if we assume, as the majority opinion assumes, that the only policy reason for a statute disqualifying a felon as a witness was that a felon's testimony was considered incredible as a matter of law, *but see* 2 Wigmore, Evidence, § 519 (Chadbourn rev. 1979) (suggesting that the disqualification was also part of the punishment), certainly the reason for the rule requiring corroboration of accomplice testimony for a conviction was *not* that the uncorroborated accomplice testimony is incredible as a matter of law. An alleged accomplice is allowed to testify, and ordinarily it is for the jury to determine whether the witness was an accomplice and the testimony is corroborated. Moreover, and more importantly, the effect of the accomplice rule is not that the uncorroborated testimony is deemed incredible but rather that it is not so credible, if not corroborated, as to establish guilt beyond a reasonable doubt. Thus the accomplice rule, when applicable, requires a specific direction to the jury that the reasonable doubt standard is not satisfied unless the accomplice testimony is corroborated. Accordingly, a law disqualifying a felon from testifying at all and a law requiring corroboration for a conviction are quite different in their effect. The one has to do with qualification to testify and the other has to do with the amount of proof necessary to satisfy the reasonable doubt standard.

The other way in which the majority opinion seeks to avoid the clear direction of *Hopt* is to interpret such phrases as "the degree, or ... the amount or measure of proof" or "the quantity or degree of proof" or "proof, in amount of degree" to refer *only* "to the burden of proof by which the

government must prove its case." At 209. In other words, argues the majority, the *Hopt* opinion means that, in the present context, retroactive application of the repeal of RCr 9.62 would violate the *ex post facto* provision *only* if it altered, for a conviction, the rule requiring proof beyond a reasonable doubt. The answer to this argument is twofold. First, this is not what *Hopt* says. It seems to me that if *Hopt* meant, by the use of these phrases, to refer only to the burden of proving guilt beyond a reasonable doubt, this would have been stated. Second, if, at the time of the decision in *Hopt* or now, the law were altered to allow a conviction on proof less than that beyond a reasonable doubt, that would have been then and would be now invalid without consideration of the *ex post facto* clause. In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), holding that proof beyond a reasonable doubt is, in state courts, necessary to satisfy the due process clause of the fourteenth amendment, the Court said:

> Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required.

*Id.* at 362, 90 S.Ct. at 1071.

The very first case cited by the Court in support of this proposition is *Miles v. United States*, 103 U.S. (13 Otto) 304, 26 L.Ed. 481 (1881), which was a criminal appeal that came to the Supreme Court from the Utah territorial court approximately two years before *Hopt*.

Accordingly, if the Court in *Hopt* had been referring to the burden of proving guilt beyond a reasonable doubt, the *ex post facto* prohibition would have been irrelevant.

Supreme Court decisions before and after *Hopt* do not lead to a different result than that which this dissent supports. While I agree with the Third Circuit in *Civil* that the *ex post facto* concept "has not been defined [by the Supreme Court] with any precision," 591 F.2d at 258, I also agree with it that the Court's decisions

generally support the proposition that retroactive application of a repeal of a rule requiring corroboration of accomplice testimony is prohibited by the *ex post facto* clause. The majority is correct to point out that in *Hopt*, as in later cases, the Court has opined that changes in law that "related to modes of procedure only" do not run afoul of the *ex post facto* clause when applied retroactively to a criminal defendant. *Hopt*, 110 U.S. at 590, 4 S.Ct. at 210. *Weaver v. Graham*, 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17 (1981) (no *ex post facto* violation "if the change effected is merely procedural"); *Gibson v. Mississippi*, 162 U.S. 565, 590, 16 S.Ct. 904, 910, 40 L.Ed. 1075 (1896) (no violation if "the provisions in question related simply to procedure"). However, the Court stated long ago emphatically that "it is obvious that a law which is one of procedure may be [also] obnoxious as an *ex post facto* law." *Kring v. Missouri*, 107 U.S. (17 Otto) 221, 232, 2 S.Ct. 443, 27 L.Ed. 506 (1883). Addressing precisely this issue, the Court in *Kring* plainly decided that only a new law that is *merely* procedural will be insulated from *ex post facto* challenge:

> [C]an any substantial right which the law gave the defendant at the time to which his guilt relates, be taken away from him by *ex post facto* legislation, because, in the use of a modern phase, it is called a law of procedure? We think it cannot.

*Id.*

Contrary to the majority's assertion, Supreme Court cases subsequent to *Hopt* have established that the state violates a "substantial right" of a criminal defendant when it applies to him *ex post facto* a law that is "more onerous ... than the law in effect on the date of the offense." *Weaver v. Graham*, 450 U.S. at 30, 101 S.Ct. at 965; *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977) ("It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law."); *Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925) (legislation violates clause if "harsh or oppressive as applied to the plaintiffs in er-

ror"). *See also Ex parte Medley*, 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835 (1890) (legislation violates clause if it "alters the situation of the accused to his disadvantage"); *Kring v. Missouri*, 107 U.S. at 235, 2 S.Ct. at 455 (same). The Court has expressly noted that:

> [t]he presence or absence of an affirmative, enforceable right is not relevant ... to the ex post facto prohibition, which forbids the imposition of ... [a law that is] more onerous than the law in effect on the date of the offense.

*Weaver v. Graham*, 450 U.S. at 30–31, 101 S.Ct. at 965.

As stated earlier, the majority opinion presents two alternative, fall back arguments for reversal of the grant of habeas relief.

The first argument is that, in point of fact, the trial court refused to give Murphy's proposed charge requiring corroboration because it determined that there was no accomplice relation between Murphy and Crittenden. Thus, argues the majority opinion, the instruction would not have been given even if RCr 9.62 had not been repealed and therefore there is no *ex post facto* issue before this court. In response, I do not read the transcript as does the majority opinion, and apparently the Commonwealth does not either. The Commonwealth has not made this contention in the Kentucky Supreme Court, or in the federal district court or here. In view of the fact that both Crittenden and Murphy were charged with this murder, it being alleged that both were present at the murder, it is difficult to see how it could make the contention. Even if the trial court did refuse to give the instruction on the basis of a finding that Crittenden was not an accomplice, since the Kentucky Supreme Court in no wise relied on this possible alternative state law ground for affirmance of the conviction, we would of necessity address the constitutional issue. *Hockenbury v. Sowders*, 620 F.2d 111, 115 (6th Cir.1980).

The other alternative ground of the majority for reversing the grant of habeas relief is that the state trial judge did not charge the jury *affirmatively* that Murphy could be convicted by the uncorroborated testimony of Crittenden. (This appears to be a kind of harmless error argument.)[3] This may be, but it was certainly the intent of the state trial court, in view of its denial of Murphy's request to give the accomplice charge, to convey the idea to the jury that Crittenden's testimony could be enough to convict Murphy, and the charge was subject to such interpretation. More importantly, as pointed out with respect to the other alternative basis for reversal, the Kentucky Supreme Court decided the constitutional issue and, consequently, we must decide it. *Hockenbury*, 620 F.2d at 115.

For the reasons set out in this dissent, I would affirm the district court in the grant of habeas relief.

---

3. This ground for denying habeas relief, like the other alternative ground asserted by the majority, has not been asserted by the Commonwealth in the other courts or here.